Present: Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and Millette, JJ., and Carrico, S.J.

DAVID L. NELSON

OPINION BY
v.  Record No. 100395    SENIOR JUSTICE HARRY L. CARRICO
                         January 13, 2011
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal involving a charge of driving while intoxicated, fourth offense within ten years (Code §§ 18.2-266; 18.2-270(C)(2)),[1] we decide whether the defendant, David L. Nelson, was "operating" a motor vehicle within the meaning of Code § 18.2-266.  A jury in the Circuit Court of Fairfax County convicted Nelson as charged and fixed his punishment at imprisonment for one year and a fine of $1,000.00.  The circuit court imposed the sentence fixed by the jury.  In an unpublished opinion, the Court of Appeals of Virginia affirmed the judgment of the circuit court.  Nelson v. Commonwealth, Record No. 2102-08-4 (February 2, 2010).  We will affirm the judgment of the Court of Appeals.

BACKGROUND

On September 2, 2007, Master Police Officer Timothy Carl Benedict of the Fairfax County Police Department received a dispatch concerning a suspicious person who had been "sleeping

---

[1] Code § 18.2-266 prescribes the offense of driving under the influence and Code § 18.2-270 specifies the punishment therefor.

or possibly passed out" in a vehicle for several hours. When he arrived on the scene, Officer Benedict observed Nelson "hunched over" in the driver's seat of a Jeep Grand Cherokee parked on a cul-de-sac in a residential neighborhood. Nelson appeared to be asleep or unconscious with a cell phone up to his ear, but he was not speaking on the phone. Through the open window on the driver's side, Officer Benedict could see that the lights of the "factory mounted radio" inside the vehicle were on and he could hear music but the engine was not running and the gearshift lever was in the "park" position.

Officer Benedict also observed that there was a key in the ignition that appeared to be in the "on or accessory position." Officer Benedict testified that in this position "the car is not actually running" but it enables one to "run the radio and use things in the car" and in "[t]hat way you don't actually have to have the engine running but you can still use the battery." Officer Benedict said that to remove the key from the steering column he had to reach through the open window and pull the key backward "to the point where it would actually release." This movement, Officer Benedict said, turned off the radio.

Officer Benedict also detected the odor of alcohol coming from the car, and he saw a 7-Eleven cup containing a clear liquid in the center console and an empty three-gallon wine jug "in the back seat." Officer Benedict observed that Nelson had

urinated on himself and had dried feces on his legs.  Nelson's hair and clothing were disheveled and it "looked like he had been there for a while."

Officer Benedict attempted to arouse Nelson by tapping on the car.  Nelson responded slowly and appeared to be confused. His speech was slurred, his eyes were bloodshot, and he smelled of alcohol, yet he denied having had anything to drink.  When he exited the car at Officer Benedict's request, he was unable to stand without holding onto the car, and he failed most of the field sobriety tests he was given by Officer Benedict.  When Nelson's blood was tested, his alcohol level was found to be .40, or five times the legal limit.  He told Officer Benedict he was renting a room in a nearby house but was not allowed to smoke there and had gone to his car to have a cigarette.

Nelson argues that the evidence was insufficient as a matter of law to convict him of driving while intoxicated because his conduct did not meet the legal standard for operating a motor vehicle.  Nelson states that he did not operate his motor vehicle by placing the key in the ignition and activating the radio because neither action alone, or in sequence, will activate the motive power of the vehicle.

STANDARD OF REVIEW

Whether Nelson operated his vehicle within the meaning of Code § 18.2-266 is a mixed question of law and fact which is

3

reviewed *de novo* on appeal.  See Carpitcher v. Commonwealth, 273 Va. 335, 343, 641 S.E.2d 486, 490-91 (2007).  "[U]pon appellate review, the evidence and all reasonable inferences flowing therefrom must be viewed in the light most favorable to the prevailing party in the trial court," in this case, the Commonwealth.  See Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008).  "The judgment of the trial court is presumed to be correct and will be reversed only upon a showing that it is plainly wrong or without evidence to support it." Id. (internal quotation marks omitted).

## ANALYSIS

We have previously reviewed several driving under the influence cases presenting the question whether the defendant was "operating" a vehicle.  Convictions were upheld in the following cases:  Gallagher v. Commonwealth, 205 Va. 666, 667, 670, 139 S.E.2d 37, 37-38 (1964) (defendant found sitting at steering wheel of car, which was stuck in a ditch with the motor running, the car in gear, and a rear wheel spinning); Nicolls v. Commonwealth, 212 Va. 257, 258-59, 184 S.E.2d 9, 10-11 (1971) (defendant found slumped over steering wheel of car, which was parked on hard surface of highway with motor running, gears engaged, high beam lights on, and heater in operation); Williams v. City of Petersburg, 216 Va. 297, 298, 301, 217 S.E.2d 893, 894, 896 (1975) (defendant found slumped over steering wheel of

4

vehicle on a paved parking lot with motor running, headlights not burning, car doors closed and locked); Lyons v. City of Petersburg, 221 Va. 10, 11-13, 266 S.E.2d 880, 880-82(1980) (defendant found seated behind steering wheel of car but made no statement about his striking of an unoccupied parked car in the rear and knocking it 25 to 30 feet).

We reversed convictions in the following two cases: Overbee v. Commonwealth, 227 Va. 238, 240, 243, 245, 315 S.E.2d 242, 243-45 (1984) (defendant found standing in front of pickup with hood up, engine not running, key not in ignition); Stevenson v. City of Falls Church, 243 Va. 434, 438, 416 S.E.2d 435, 438 (1992).

Stevenson is the focal point of the argument of the parties in this case. There, in the early morning hours, the defendant was found asleep behind the steering wheel of a car located on a convenience store parking lot. The engine and all other mechanical and electrical parts were turned off. There was a key in the ignition, but the arresting officer could not recall whether the key was in the "on" or the "off" position. 243 Va. at 435, 416 S.E.2d at 436.

We stated as follows:

> In Williams, . . . we pointed out that "operating" a
> vehicle within the proscription of the drunk driving
> statute

5

> not only includes the process of moving the vehicle from one place to another, but also includes starting the engine, or manipulating the mechanical or electrical equipment of the vehicle without actually putting the car in motion.  It means engaging the machinery of the vehicle which alone, or in sequence, will activate the motive power of the vehicle*.*
>
> . . . .
>
> We adhere to our holding in Williams and apply it here. It was not recalled whether the key was in the "on" or "off" position.  And, on appeal, we must assume that the key was in the off position.
>
> Because the presence of the key in the ignition switch in the off position did not engage the mechanical or electrical equipment of Stephenson's car, Stevenson did not "drive or operate" the car within the meaning of the statutes that were incorporated by reference in the Falls Church ordinance.

Id. at 438, 416 S.E.2d at 438 (emphasis and internal quotation marks omitted).

Nelson says that Stevenson is indistinguishable and that we must assume here, as we did there, that the ignition key in the offending car was in the "off" position.  Therefore, Nelson continues, we must hold here that because the ignition key was in the off position he did not engage the mechanical or electrical equipment of his car and did not "drive or operate" the car within the meaning of Code § 18.2-266.

We disagree that we must assume that the ignition key in Nelson's car was in the "off" position.  Nelson states on brief that Officer Benedict "could not recall what position the key

6

was in." This is an incorrect statement. Officer Benedict never said he could not recall the status of the ignition key. Rather, he stated unequivocally that the key was in the "on or accessory" position, and his testimony left no doubt it was the key, whether in an "on" position or an "accessory" position, that turned on the "factory mounted radio."

Nelson states, however, that the Commonwealth's evidence did not exclude the "reasonable hypothesis" that his "vehicle could have been one of many models in which a key is not required to activate the radio." (Emphasis added.) Nelson also says that the Commonwealth's evidence "did not preclude the possibility that Mr. Nelson's car was one of [the] many with a safety feature requiring the key to be turned backward from the 'off' position before it will release." (Emphasis added.) But there was no burden on the Commonwealth to negate what "could have been" or what was a "possibility."[2]

---

[2] Nelson says that "the Commonwealth conceded in closing argument that its evidence did not prove the position of the key." The following is the purported concession:

"It makes a big difference between the accessory of the jeep, and kind of glibly says that, gee, you can't move the gear shift unless it's in whatever. We don't know that about this particular jeep. We don't know that."

The Commonwealth made this purported concession in response to Nelson's assertion that no individual can move a car with the key in the accessory position because one "can't even move the gear shift from the accessory position." This purported concession does not change the outcome of this case.

7

Nelson argues that "[e]ven if this Court finds that the key was not in the 'off' position, Mr. Nelson still was not operating a motor vehicle." "There is no meaningful distinction," Nelson says, "between the act of putting the key into the ignition slot and the act of turning it forward or backward to operate the accessories." "In either case," Nelson continues, "there is no nexus between Mr. Nelson's action and the motive power of the vehicle because activating the radio is not part of the sequence of activating the motive power of the vehicle." Nelson concludes that "[b]y holding in Stevenson that putting a key in the ignition is not operating, [this Court] acknowledged that putting the key in the ignition is not an action which could alone or in sequence activate the motive power of the vehicle."

We have read and re-read the page of Stevenson cited by Nelson, 243 Va. at 437, 416 S.E.2d at 437, and have been unable to find where we held that "putting a key in the ignition is not operating" or where we said anything else amounting to an acknowledgement that "putting the key in the ignition is not an action which could alone or in sequence activate the motive power of the vehicle." Indeed, the words "motive power" do not appear anywhere on that page. They appear on the following page in the definitional paragraph quoting Williams, noted above, which does not contain any kind of acknowledgement on our part.

8

In any event, Stevenson does not support Nelson's claim that "activating the radio is not part of the sequence of activating the motive power of the vehicle." The question whether the motive power was activated was not reached in Stevenson. The conviction was reversed solely because the key was in the "off" position and therefore "did not engage the mechanical or electrical equipment of Stevenson's car [and] Stevenson did not 'drive or operate' the car within the meaning of the statutes that were incorporated by reference in the Falls Church ordinance." 243 Va. at 438, 416 S.E.2d at 438.

Here, the key was not in the "off" position but in an "on or accessory position." Nelson turned on the radio by placing the key in the latter position, and his action constituted "manipulating the . . . electrical equipment of the vehicle." Operating" means "engaging the machinery of the vehicle which alone, or in sequence, will activate the motive power of the vehicle." Id. (Emphasis added.) Manipulating the electrical equipment was one step between the "off" position and the point at which the motive power would be activated. While Nelson's action in turning the key to the "on" or "accessory" position of the ignition did not alone activate the motive power, it was an action taken "in sequence" up to the point of activation, making him the operator of the vehicle within the meaning of Code § 18.2-266.

9

For the reasons assigned, we will affirm the judgment of the Court of Appeals.

<u>Affirmed</u>.

JUSTICE KOONTZ, dissenting.

I respectfully dissent.  Although the issue of what is contemplated by the term to "operate" a vehicle contained in Code § 18.2-266 and its predecessors has vexed the courts of this Commonwealth for more than forty-five years, in my view, the resolution of that issue could not be more straightforward. As was observed by the dissent in <u>Williams v. City of Petersburg</u>, the provision now codified as Code § 18.2-266 is "designed to prohibit and punish a person for 'operating,' not for 'occupying,' a vehicle while under the influence of alcohol."  216 Va. 297, 303, 217 S.E.2d 893, 898 (1975) (Harrison, J., joined by Cochran and Poff, JJ., dissenting). The truth of that observation is unassailable.  Today, however, the majority of this Court permits the defendant to be convicted of violating Code § 18.2-266 where the defendant, while occupying the vehicle and under the influence of alcohol, was merely listening to the vehicle's radio.

Code § 18.2-266, in pertinent part, provides that:  "[i]t shall be unlawful for any person <u>to drive or operate</u> any motor vehicle . . . while such person is under the influence of

10

alcohol." (Emphasis added.) The term "drive" has an obvious meaning that includes putting the vehicle in motion. The term "operate" has a less obvious meaning and, consequently, has been the subject of a number of our prior cases. The majority opinion reviews those cases in which, for purposes of construing the meaning of the term "operate," we have held under the particular facts of each case that the defendant was operating a vehicle while under the influence of alcohol. Significantly, in each case the evidence established that the defendant was in the vehicle with the motor of the vehicle running. See, e.g., Williams, 216 Va. at 298, 217 S.E.2d at 894; Nicolls v. Commonwealth, 212 Va. 257, 258, 184 S.E.2d 9, 10 (1971); Gallagher v. Commonwealth, 205 Va. 666, 667, 139 S.E.2d 37, 38 (1964).

In Williams, we concluded that "operating" a vehicle has a broader meaning than "driving" a vehicle. We concluded that in addition to the process of moving the vehicle from one place to another, operating "includes starting the engine, or manipulating the mechanical or electrical equipment of the vehicle without actually putting the [vehicle] in motion. It means engaging the machinery of the vehicle which alone, or in sequence, will activate the motive power of the vehicle." 216 Va. at 300, 217 S.E.2d at 896.

It is the application of the last sentence of this quoted language that subsequently was revisited in Stevenson v. City of Falls Church, 243 Va. 434, 416 S.E.2d 435 (1992), and is the focus of the present appeal.  In Stevenson, the intoxicated defendant was found inside a vehicle and asleep behind the steering wheel.  The key was in the ignition in the "off" position.  The motor of the vehicle was not running and all of its other mechanical and electrical equipment were off.  Id. at 435, 438, 416 S.E.2d at 436, 438.  A majority of the Court held that because the presence of the key in the ignition did not engage the mechanical or electrical equipment of the vehicle, the defendant did not "operate" the vehicle within the meaning of Code § 18.2-266.  Id. at 438, 416 S.E.2d at 438.

In the present case, the defendant while intoxicated was found inside a vehicle, "hunched over" in the driver's seat, and either asleep or unconscious.  The motor of the vehicle was not running and the gearshift lever was in the "park position."  However, the key to the vehicle's ignition was in the "on or accessory position" so as only to permit the activation of the vehicle's radio using the electrical power of the vehicle's battery.  The radio was emitting music when the police approached the vehicle.

The dispositive question in this appeal then becomes whether these facts satisfy the test of "engaging the machinery

12

of the vehicle which alone, or in sequence, will activate the motive power of the vehicle." The majority goes to some length to find a distinction between the significance of a key in the ignition in the "off" position as was deemed the fact in Stevenson and, as here, a key in the ignition in an "on or accessory position" that turned on the vehicle's radio. In my view, the majority labors to find a distinction without significance.

Manipulating the key to the ignition of the vehicle so that the vehicle's radio functioned would not and could not "alone" activate the motive power of the vehicle. Nor could that act in sequence do so. It is a matter of common understanding and experience that the key had to be placed in the position engineered to activate the motive power of the vehicle rather than the position of the key engineered to activate the vehicle's radio.

In short, the evidence in this case established that the defendant while intoxicated occupied the vehicle and activated the vehicle's radio, but it fails to establish that he "operated" the vehicle. Accordingly, I would reverse the Court of Appeals judgment affirming the defendant's conviction for violating Code § 18.2-266 and vacate that conviction.