COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Frank and Humphreys
Argued at Chesapeake, Virginia


MATTHEW THOMAS BENNETT

v.      Record No. 1803-11-1

COMMONWEALTH OF VIRGINIA

WILLIAM JAMES BOWERS, JR.

v.      Record No. 1804-11-1

COMMONWEALTH OF VIRGINIA

JOHN W. BROWN

v.      Record No. 1805-11-1

COMMONWEALTH OF VIRGINIA

MICHAEL J. KLEBAK

v.      Record No. 1806-11-1

COMMONWEALTH OF VIRGINIA

CARL JAY KLEIN

v.      Record No. 1807-11-1

COMMONWEALTH OF VIRGINIA

SCOTT M. LAFOUNTAINE

v.      Record No. 1808-11-1

COMMONWEALTH OF VIRGINIA

EDWARD J. LEMMON

v.      Record No. 1809-11-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROBERT J. HUMPHREYS
AUGUST 21, 2012

PAUL A. MAROON

v.        Record No. 1810-11-1

COMMONWEALTH OF VIRGINIA

ARNOLD E. MEADOWS, S/K/A
  ARNOLD E. MEADOWS, JR.

v.        Record No. 1811-11-1

COMMONWEALTH OF VIRGINIA

RONALD LEE MOORE

v.        Record No. 1812-11-1

COMMONWEALTH OF VIRGINIA

MARK DARREL OSENBAUGH

v.        Record No. 1813-11-1

COMMONWEALTH OF VIRGINIA

KRISTINA G. PRICE

v.        Record No. 1814-11-1

COMMONWEALTH OF VIRGINIA

MICHAEL H. ST. CLAIR

v.        Record No. 1815-11-1

COMMONWEALTH OF VIRGINIA

PAUL E. WARREN

v.        Record No. 1816-11-1

COMMONWEALTH OF VIRGINIA

RICHIE D. WELLS, S/K/A
  RITCHIE D. WELLS

v.        Record No. 1817-11-1

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge

Matthew D. Danielson (Jeffrey M. Summers; McGrath & Danielson,
on briefs), for appellants.

Katherine Quinlan Adelfio, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General; Donald E. Jeffrey, III, Senior
Assistant Attorney General, on briefs), for appellee.

Matthew Thomas Bennett, William James Bowers, Jr., John W. Brown, Michael J. Klebak, Carl Jay Klein, Scott M. Lafountaine, Edward J. Lemmon, Paul A. Maroon, Arnold E. Meadows, Ronald Lee Moore, Mark Darrel Osenbaugh, Kristina G. Price, Michael H. St. Clair, Paul E. Warren, and Richie D. Wells (hereafter referred to collectively as "appellants" and individually by last name) appeal their convictions in the Circuit Court of the City of Virginia Beach ("trial court") for failing to comply with Virginia's motorcycle helmet law, Code § 46.2-910.[1] On appeal, appellants contend that the trial court erred (1) "in convicting [each appellant] because Code § 46.2-910 does not require that a motorcycle helmet be certified, approved or labeled/marked by any entity," (2) "in finding that the Commonwealth proved beyond a reasonable doubt that [each appellant] violated Code § 46.2-910 [because] [t]he Commonwealth failed to prove that [each appellant's] helmet failed to meet or exceed each of the three applicable standards under that statute," and (3) "when it equated the lack of labeling [with] proof beyond a reasonable doubt that a motorcycle helmet does not meet or exceed any particular standard."

Additionally, Bennett contends that the "trial court erred in convicting [him] as [his] statement that he knew he was not wearing a helmet is not evidence which proves beyond a

_____

[1] By agreement of counsel, these cases have been consolidated on appeal for oral argument and decision.

- 3 -

reasonable doubt that his motorcycle helmet failed to meet or exceed each of the three applicable standards listed in [Code § 46.2-910]."

Klebak contends that the "trial court erred in convicting [him] as [his] statement that he knew he was not wearing a 'real' helmet is not evidence which proves beyond a reasonable doubt that his motorcycle helmet failed to meet or exceed each of the three applicable standards listed in [Code § 46.2-910]."

Klein contends that the "trial court erred in convicting [him] as [his] statement that he knew he was not wearing a 'real helmet' is not evidence which proves beyond a reasonable doubt that his motorcycle helmet failed to meet or exceed each of the three applicable standards listed in [Code § 46.2-910]."

Lemmon contends that the "trial court erred in convicting [him] as [his] statement that he knew he was wearing a 'novelty helmet' is not evidence which proves beyond a reasonable doubt that his motorcycle helmet failed to meet or exceed each of the three applicable standards listed in [Code § 46.2-910]."

I.  Background

These appeals center around traffic summonses issued to each of the appellants for failing to wear a proper helmet while operating or riding as a passenger on a motorcycle.  Under the relevant statute, Code § 46.2-910, both operators and passengers on motorcycles are required to wear protective helmets "which meet or exceed the standards and specifications of the Snell Memorial Foundation [("Snell")], the American National Standards Institute, Inc. [("ANSI")], or the federal Department of Transportation [("DOT")]."  Trooper Ross Thompson ("Trooper Thompson") issued a majority of the summonses involved in these appeals and was the primary

witness called by the Commonwealth to testify at trial.[2] Trooper Thompson testified that he read the Snell and DOT standards in their entirety and as much of the ANSI standards as he could without purchasing them.[3]

Although Trooper Thompson did not recite the particulars of each standard, he testified without objection that generally the Snell requirements mirror the DOT requirements. However, he went on to explain that the standards are not alike and that the Snell and ANSI standards are more stringent than the minimum standards of the DOT. Trooper Thompson also testified that the DOT standards require certain labeling reflecting that the helmet meets the DOT standards. With regard to each appellant, Trooper Thompson indicated, again without objection, that their helmets did not meet any of the standards. However, he was unable to articulate which particular part of the various standards the helmets failed to meet. Instead, he opined that he could tell just by looking at them.

The appellants called two expert witnesses to testify regarding the standards. Bruce Biondo ("Biondo") is an employee with the Department of Motor Vehicles as part of the Virginia Rider Training Program. He testified that he has read the Snell and DOT standards, and he has looked over the ANSI standards but not read all of them. Biondo explained that the three standards are engineering standards, not manufacturing standards. As such, they relate to the results of testing helmets, not their actual construction. Because of this, he opined that there is no way that one could look at a helmet and determine that it does not meet the standards.

---

[2] Because the appellants' cases all involved the same offense and issue of statutory interpretation, the trial court incorporated the testimony of Trooper Thompson and both of the defense witnesses, Bruce Biondo and James Cannon, in each case, with the exception of any statements made by an individual appellant.

[3] Unlike the DOT and Snell standards, the ANSI standard requires a paid subscription to view its requirements.

Furthermore, while manufacturers put DOT stickers on helmets that are DOT certified,[4] consumers can take the stickers off or cover over them.

James Cannon ("Cannon") also testified as an expert for the defense. Cannon is employed by the Virginia Commonwealth University Transportation Safety Training Center teaching motorcycle accident reconstruction, and serves in several other positions relating to motorcycle safety with various organizations. Cannon testified that he has read and is familiar with all of the DOT, Snell, and ANSI standards. He confirmed that the standards are testing standards rather than manufacturing standards, and thus, there is no way to tell that a helmet does not meet the standards just by looking at it and without subjecting it to actual testing. Cannon also testified that the ANSI standard was promulgated prior to the DOT standard and that it was similar but not as stringent. Cannon then clarified what it means to be DOT certified:

> DOT helmets are self-certified by the manufacturer. Every year DOT selects 40 helmets at random and tests them. Between 45 and 55 percent of those helmets fail every year when they test them. So the fact that it carries a DOT marking only means that the guy that poured the fiberglass in the molds says it meets those standards. There's no evidence that any like models have ever been tested.

Furthermore, the manufacturers do not have to go through the testing for each and every make and model of helmet.

During the trials, counsel for the appellants made a motion to strike, arguing that the statute does not require that helmets bear any labeling indicating their satisfaction of the Snell, ANSI or DOT standards. The trial court listened to arguments on the issue from each party, and ultimately ruled that the statute requires helmets to be labeled indicating their compliance with

---

[4] Biondo testified that manufacturers actually self-certify that the helmets are DOT compliant. Therefore, it is the manufacturers that supply the relevant labeling, not the DOT.

one of the standards.[5]  The trial court then convicted each of the appellants under Code

§ 46.2-910, and the appellants noted these appeals.

## II.  Analysis

### A.  Code § 46.2-910 and Labeling

On appeal, the Commonwealth concedes error and suggests reversal in every case except

those of Brown and Klein.  However, "[w]e have no obligation to accept concessions of error,

and, to be sure, we would never do so if the issue were a pure question of law."  Copeland v.

Commonwealth, 52 Va. App. 529, 531, 664 S.E.2d 528, 529 (2008) (citation omitted).  Because

these appeals require us to interpret Code § 46.2-910, we must perform our own analysis and

determine if a valid basis supports the Commonwealth's concession.  A question of statutory

interpretation is subject to review *de novo* on appeal.  Wright v. Commonwealth, 275 Va. 77,

80-81, 655 S.E.2d 7, 9 (2008).

The appellants' first and third assignments of error can be simplified into one basic

question:  was the trial court correct in concluding that Code § 46.2-910 requires that operators

---

[5] During the trial, the following exchange took place:

> [Appellants' Counsel]:  Your Honor, for clarification, I had understood the Court acknowledged that the paragraph that says "and is marked in accordance with such standards," that helmets are not mentioned in there.
>
> THE COURT:  Well, helmets aren't mentioned but when you read it altogether, which I just did again, it says windshields, face shields, safety glasses or goggles or protective helmets required by this section, which I would assume to mean all in Section A because that last paragraph actually is a continuation of Paragraph A.  So when it says this section, it doesn't really matter, I guess, since it doesn't mention helmets in the second part.  It's a source of dispute I understand but a closer reading of that would seem to indicate that when it talks about this section, that means Section A.

and passengers on motorcycles wear protective helmets that bear a label indicating their satisfaction with certain safety standards?  Code § 46.2-910(A) states, in relevant part,

> Every person operating a motorcycle shall wear a face shield, safety glasses or goggles, or have his motorcycle equipped with safety glass or a windshield at all times while operating the vehicle, and operators and any passengers thereon shall wear protective helmets. . . . *The windshields, face shields, glasses or goggles, and protective helmets required by this section shall meet or exceed the standards and specifications of the Snell Memorial Foundation, the American National Standards Institute, Inc., or the federal Department of Transportation.*
>
> No motorcycle operator shall use any *face shield, safety glasses or goggles, or have his motorcycle equipped with safety glass or a windshield* unless of a type . . . that meets or exceeds the standards and specifications of the Snell Memorial Foundation, the American National Standards Institute, Inc., or the federal Department of Transportation *and is marked in accordance with such standards.*

(Emphasis added).

We begin our analysis of this statute by noting the well-recognized principle of statutory interpretation:  "When the General Assembly uses 'words of a plain and definite import, courts cannot assign to them a construction that would be tantamount to holding that the General Assembly intended something other than that which it actually expressed.'"  Mouberry v. Commonwealth, 39 Va. App. 576, 583, 575 S.E.2d 567, 570 (2003) (quoting Mozley v. Prestwould Bd. of Dirs., 264 Va. 549, 554, 570 S.E.2d 817, 820 (2002)).  Furthermore, we assume that the legislature chose the wording of a statute with care, and we are bound by the legislature's construction in interpreting the statute.  Kummer v. Donak, 282 Va. 301, 304, 715 S.E.2d 7, 9 (2011).  Thus, "[t]he words of a statute should be given 'their common, ordinary and accepted meaning' absent a contrary intent by the legislature."  Mouberry, 39 Va. App. at 583, 575 S.E.2d at 570 (quoting Germek v. Germek, 34 Va. App. 1, 8, 537 S.E.2d 596, 600 (2000)).

Here, the first paragraph of Code § 46.2-910 requires only that the equipment required by that paragraph, including protective helmets, "meet or exceed the standards and specifications of

the Snell Memorial Foundation, the American National Standards Institute, Inc., or the federal Department of Transportation." There is no requirement that the equipment be marked to that effect. The second paragraph, on the other hand, clearly requires that the enumerated safety equipment be "marked in accordance with such standards." Code § 46.2-910. However, protective helmets are not included in the second paragraph's list of safety equipment. The omission is noteworthy, because the general "rule in Virginia [is] that 'when the General Assembly includes specific language in one section of a statute, but omits that language from another section of the statute, we must presume that the exclusion of the language was intentional.'" Halifax Corp. v. Wachovia Bank, 268 Va. 641, 654, 604 S.E.2d 403, 408 (2004) (quoting Halifax Corp. v. First Union Nat'l Bank, 262 Va. 91, 100, 546 S.E.2d 696, 702 (2001)). Thus, by including language requiring the safety equipment in the second paragraph to bear a marking and failing to include comparable language in the first paragraph, the legislature made clear it did not intend for the labeling requirement to apply to the items, including helmets, listed in the first paragraph. Since protective helmets are listed only in the first paragraph, it follows that there is no requirement that they be marked or labeled in accordance with any safety standard.

While a labeling requirement for helmets might make sense as a practical and policy matter and would certainly simplify enforcement of the safety requirements, "'[c]ourts are not permitted to rewrite statutes. This is a legislative function. The manifest intention of the legislature, clearly disclosed by its language, must be applied. There can be no departure from the words used where the intention is clear.'" Wachovia, 268 Va. at 653, 604 S.E.2d at 408 (quoting Supinger v. Stakes, 255 Va. 198, 206, 495 S.E.2d 813, 817 (1998)). Thus, we must reverse the judgments of convictions for violation of Code § 46.2-910 of Bowers, Lafountaine, Maroon, Meadows, Moore, Osenbaugh, Price, St. Clair, Warren, and Wells, and dismiss the

summonses issued in those cases as their convictions were based solely upon a lack of any label or other marking indicating that the helmets worn met any of the appropriate standards.

### B.  John W. Brown, Record No. 1805-11-1

While the Commonwealth has conceded error in the judgment of thirteen of the fifteen cases that comprise this collective appeal, it does not do so in Brown's case.  Instead, the Commonwealth argues that there is sufficient evidence aside from the lack of labeling from which this Court can affirm Brown's conviction.  Thus, the Commonwealth contends, Brown cannot meet his burden in establishing his second assignment of error, that the "trial court erred in finding that the Commonwealth proved beyond a reasonable doubt that [he] violated Code § 46.2-910 [because] [t]he Commonwealth failed to prove that [his] helmet failed to meet or exceed each of the three applicable standards under that statute."

In addition to the evidence regarding the lack of labeling on Brown's helmet, the Commonwealth elicited testimony regarding the nature of Brown's helmet strap.  According to Trooper Thompson, Brown was wearing a "toy hat" which was secured by a strap that was held together by a key ring.  Trooper Thompson clarified that the strap was on "the side part [of the toy hat].  Instead of the plastic retainer on his toy hat, he had a key ring that had the strap going through it."  When asked whether he could point to anything in the DOT standards that would prohibit the use of a key ring on a strap, Trooper Thompson testified, "It has to be securely fastened and the key ring was like this holding the strap together (indicating)."  The trial court then noted, "[f]or the record, the trooper is holding up a key ring."  However, Trooper Thompson did not testify directly as to whether or how this would violate the Snell or ANSI standards.

In his defense, Brown called Cannon, who indicated that whether the key ring violated the DOT standards would "depend on the tensile strength of the ring.  I mean, there's a continuation test and it depends.  If the key ring was strong enough, it surely would, you know."

Further, Cannon indicated that it was "within the realm of possibility" that the key ring could pass the DOT standards or ANSI standards.

Under our appellate standard of review, "'we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Baylor v. Commonwealth, 55 Va. App. 82, 84, 683 S.E.2d 843, 844 (2009) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 135, 455 S.E.2d 730, 731 (1995)). Furthermore, "[t]he judgment of the trial court is presumed to be correct and will be reversed only upon a showing that it is plainly wrong or without evidence to support it." Enriquez v. Commonwealth, 283 Va. 511, 514, 722 S.E.2d 252, 254 (2012) (citing Nelson v. Commonwealth, 281 Va. 212, 215, 707 S.E.2d 815, 816 (2011)).

Even under our appellate standard of review, the only evidence adduced at trial regarding the nonconforming nature of Brown's helmet was that it was a "toy hat" which was secured by a strap that was held together by a key ring. Trooper Thompson indicated that in order to comply with the DOT standards, a helmet "has to be securely fastened," and apparently neither Trooper Thompson nor the trial court felt that the key ring constituted a secure fastener. However, the Commonwealth's only witness, Trooper Thompson, failed to indicate whether the ANSI or Snell standards had a similar requirement. Furthermore, given the ambiguity in the statute permitting compliance with *any* of three sets of standards, none of which were formally introduced into evidence by the Commonwealth which instead provided only lay opinion testimony of their partial contents, we cannot say from the sparse record before us that all three of the applicable standards require the helmet to be securely fastened in a specific manner. Because the statute

- 11 -

indicates that a helmet can meet *any* of the three standards, the Commonwealth did not meet its burden in establishing that Brown's use of the helmet was not in compliance with the statute.[6]

The Commonwealth argues we can infer from Trooper Thompson's statement that "the Snell and ANSI standards are above the minimum standards of the DOT standard" that these additional standards would not be met. However, by Trooper Thompson's own admission, he did not read the ANSI standards in their entirety because he did not have access to them. Trooper Thompson also testified that the standards are not exactly the same. Therefore, this argument has no merit. Thus, we must also reverse the conviction in Brown's case and dismiss the summons.

### C. Bennett, Record No. 1803-11-1, Klebak, Record No. 1806-11-1, Klein, Record No. 1807-11-1, and Lemmon, Record No. 1809-11-1

The Commonwealth concedes error with respect to Bennett and Klebak. As previously noted, we are not bound by concessions of law by the Commonwealth, Copeland, 52 Va. App. at 531, 664 S.E.2d at 529, and we do not agree with the concession of the Commonwealth in Bennett's, Klebak's and Klein's cases and hold instead that the trial court did not err in finding the evidence sufficient to convict them under Code § 46.2-910.[7] However, we reverse the conviction and dismiss the summons in Lemmon's case.

---

[6] Furthermore, the statute itself is devoid of any language requiring the protective helmets to be fastened in any way. See Code § 46.2-910. However, because we decide issues on the narrowest grounds available, we need not address whether the statute requires the helmets to be fastened. McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010).

[7] While the Commonwealth recommended reversal in many of the cases comprising this appeal, it did not do so in the case of Klein based on his statements regarding the nonconforming nature of his helmet. However, the Commonwealth conceded error in the cases of Bennett, Klebak, and Lemmon. At oral argument, the Commonwealth explained that it did so in Bennett, Klebak, and Lemmon's cases but not in Klein's case, because, unlike in Klein's case, no corroborating evidence supported the extra-judicial confessions of Bennett, Klebak, and Lemmon as discussed *supra*. See generally Jefferson v. Commonwealth, 6 Va. App. 421, 424-25, 369 S.E.2d 212, 214 (1988). However, these appellants never raised this issue in the

The record indicates that in the cases of Bennett, Klebak, Klein, and Lemmon, there was an incriminating statement made regarding the nonconforming nature of their helmets. On appeal, each of these appellants contends that the trial court erred "in finding that the Commonwealth proved beyond a reasonable doubt that [each appellant] violated Code § 46.2-910 [because] [t]he Commonwealth failed to prove that [each appellant's] helmet failed to meet or exceed each of the three applicable standards under that statute."[8]

As stated *supra*, Code § 46.2-910 requires, in relevant part, that "operators and any passengers [of motorcycles] shall wear protective helmets . . . . The . . . protective helmets required by this section shall meet or exceed the standards and specifications of [Snell], [ANSI], or [DOT]." It is undisputed that the appellants were each wearing some form of headgear. The question in this case is whether the headgear that they each wore qualified as a protective helmet that met or exceeded the Snell, ANSI, or DOT standards.

Appellants argue that since the three standards listed in the statute are engineering standards,[9] that is, the standards relate to passing certain durability tests as opposed to the methods and materials used in manufacturing the helmets, the Commonwealth failed to prove that the helmets did not meet any of the three standards beyond a reasonable doubt, as it did not test appellants' helmets. We disagree with this argument, as it fails to account for any circumstantial evidence that may tend to prove the helmets did not meet or exceed any of the

---

trial court, and therefore, we are not concerned on appeal with the issue of whether the incriminating statements were corroborated at trial. Rule 5A:18.

[8] Because each appellant's additional assignment of error is encompassed within this assignment of error, we address them together.

[9] We note that none of the standards were introduced into evidence at trial, and thus, we cannot confirm that they are engineering standards. However, the only evidence relating to the nature of the standards came from opinion testimony of two defense expert witnesses, and their testimony was uncontested.

safety standards. "'[C]ircumstantial evidence is competent and is entitled to as much weight as direct evidence[,] provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" Finney v. Commonwealth, 277 Va. 83, 89, 671 S.E.2d 169, 173 (2009) (second alteration in original) (quoting Dowden v. Commonwealth, 260 Va. 459, 468, 536 S.E.2d 437, 441 (2000)).

In this case, Bennett told Trooper Thompson that he knew what he was wearing "was not a helmet." Likewise, Klebak told Trooper Thompson that he knew his headgear "wasn't a real helmet." Finally, Trooper Thompson testified that Klein had a heavier helmet in the trunk of his trike, which he donned to leave the scene, and that the headgear Klein was wearing at the time of the stop bore a label that identified it as a "novelty helmet" that "wasn't for use on the road." A fact finder could infer from this evidence that if the headgear these appellants were wearing was so deficient that appellants knew they were not "helmets," "real helmets," or "for use on the road," they were not compliant with any safety standards. While these statements are not direct evidence that their headgear did not meet any of the standards, it is certainly circumstantial evidence of such, and "[t]here is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence. The finder of fact is entitled to consider *all of the evidence*, without distinction, in reaching its determination." Commonwealth v. Hudson, 265 Va. 505, 512-13, 578 S.E.2d 781, 785 (2003) (emphasis added).

Lemmon's statement, on the other hand, does not rise to a level as to eliminate every reasonable hypothesis that his helmet met any of the safety standards. Lemmon told Trooper Thompson that he knew his helmet was a novelty helmet. However, stating that a helmet is a novelty helmet is not the same as admitting the helmet provides no level of safety consistent with any of the standards. Webster's Dictionary defines a "novelty" as "a small manufactured article intended mainly for decoration or adornment and marked by unusual or novel design."

Webster's Third New International Dictionary 1546 (1993). Without more than has been shown in this record, it does not automatically follow that a helmet cannot meet certain safety standards if designed specifically for decoration. In fact, the record indicates that it is commonplace for motorcycle operators and passengers to decorate their helmets with decals and designs. Thus, unlike the evidence in the cases of Bennett, Klebak, and Klein, Lemmon's statement to Trooper Thompson does not provide a sufficient basis to establish the elements of an offense under Code § 46.2-910.

Bennett, Klebak, and Klein also contend that "[w]ithout additional information as to what [they] meant by the[ir] statement[s], a court cannot take the statement[s] alone as proof beyond a reasonable doubt that the[ir] helmet[s] fail[ed] to meet or exceed the specifications and standards" of Snell, ANSI or DOT. Specifically they each argue that their statements "could very well have meant that [they] did not believe that [their] helmet[s] met the requirements of the manufacturing standards" or they "could have thought that [their] helmet[s were] not [DOT] certified and mistakenly thought such certification was required." Bennett further argues that he is a North Carolina resident and that his statement could have meant merely that he did not believe his helmet met North Carolina's standards. We also reject these arguments because again, they do not consider our required appellate standard of review.

On appeal, "we view the evidence and all reasonable inferences therefrom in the light most favorable to the Commonwealth, the prevailing party below, and we will set aside the judgment only if it is clearly wrong or unsupported by the evidence." Powell v. Commonwealth, 268 Va. 233, 236, 602 S.E.2d 119, 120-21 (2004). Thus, while these appellants may have meant any number of things by their statements, a fact finder could reasonably infer that the statements were intended to express appellants' beliefs that their helmets failed to meet or exceed any of the

three enumerated standards in Code § 46.2-910, and we must presume that the trial court did so in these cases.

## III.  Conclusion

For the reasons stated, we reverse the convictions of Bowers, Brown, Lafountaine, Lemmon, Maroon, Meadows, Moore, Osenbaugh, Price, St. Clair, Warren, and Wells and dismiss the summonses.  However, we affirm the convictions of Bennett, Klebak, and Klein.

<u>Reversed</u> in Record Nos. 1804-11-1, 1805-11-1, 1808-11-1,
1809-11-1, 1810-11-1, 1811-11-1, 1812-11-1, 1813-11-1,
1814-11-1, 1815-11-1, 1816-11-1 & 1817-11-1.

<u>Affirmed</u> in Record Nos. 1803-11-1, 1806-11-1 & 1807-11-1.