COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Humphreys, Beales and O'Brien
Argued at Norfolk, Virginia


JEFF CHARLES HAMMER, M.D.,
  LINDA JOY MATHISON-EZIEME, M.D.
  AND VIRGINIA CENTER FOR WOMEN, INC. d/b/a
  VIRGINIA CENTER FOR WOMEN
                                                OPINION BY
v.        Record No. 0877-16-1          JUDGE MARY GRACE O'BRIEN
                                                FEBRUARY 28, 2017
D.S., CRYSTAL SENECAL, JAMIE SENECAL,
  AND THE VIRGINIA BIRTH-RELATED
  NEUROLOGICAL INJURY FUND


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Jason R. Davis (Mary Elizabeth Sherwin; Kaufman & Canoles, P.C.,
        on briefs), for appellants.

        Carla R. Collins, Senior Assistant Attorney General; Judith M.
        Cofield (Mark R. Herring, Attorney General; Rhodes B. Ritenour,
        Deputy Attorney General; Nicholas F. Simopoulos, Senior Assistant
        Attorney General, on brief), for appellees.


        D.S. ("claimant" or "the child") and Crystal Senecal filed a medical malpractice suit against

the physicians who provided prenatal care to Ms. Senecal, the child's mother.  In defense of the

claim, the physicians ("appellants") asserted statutory tort immunity under the Virginia

Birth-Related Neurological Injury Compensation Act, Code §§ 38.2-5000 to -5021.  At appellants'

request, the circuit court transferred the case to the Workers' Compensation Commission ("the

Commission") to determine whether claimant was required to accept compensation under the Act

instead of proceeding with his lawsuit.  Following a hearing, a deputy commissioner found that the

Act did not apply and appellants were not entitled to statutory immunity.  The full Commission

affirmed.  Appellants assert the following assignments of error on appeal:

1. The Commission erred in interpreting and applying Virginia Code § 38.2-5001, specifically the time period during which a birth-related neurological injury may occur, for purposes of deciding applicability of the Act.

2. The Commission erred in finding that [claimant and the Virginia Birth-Related Neurological Injury Fund] met their burden of proof and production with sufficient credible evidence to rebut the presumption set forth in Virginia Code § 38.2-5008(A)(1)(a).

## I. Legal Background

This case involves the application of the Virginia Birth-Related Neurological Injury Compensation Act ("the Act"). "One of only two such statutes in the nation, the . . . Act provides claimants with a no-fault remedy for compensation for qualified injuries." Cent. Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield, 42 Va. App. 264, 271, 590 S.E.2d 631, 635 (2004). "The Act also affords potential tort defendants . . . an absolute immunity to civil malpractice liability for these injuries" if they contribute to a compensation fund. Id. A claimant may seek application of the Act to his claim to obtain benefits from the fund. Or, "in cases where litigation may be more promising, a claimant may seek to *defeat* the application of the Act to his claim . . . where the tort defendants in a pending malpractice lawsuit seek the application of the Act to the claim over the objection of the claimant." Id. at 271-72, 590 S.E.2d at 635. Here, appellants sought to have the child's claim resolved pursuant to the Act, rather than in a medical malpractice suit.

For the Act to apply, the infant must have sustained a "birth-related neurological injury" as defined in Code § 38.2-5001. We have held that the definition of a "birth-related neurological injury" contains four elements:

1. The infant sustained "an injury to the brain or spinal cord" that was "caused by deprivation of oxygen or mechanical injury."

2. The injury occurred "in the course of labor, delivery or resuscitation necessitated by a deprivation of oxygen or

mechanical injury that occurred in the course of labor or delivery, in a hospital."

3. The injury rendered the infant "permanently motorically disabled and (i) developmentally disabled or (ii) for infants sufficiently developed to be cognitively evaluated, cognitively disabled."

4. Such disability caused "the infant to be permanently in need of assistance in all activities of daily living."

Cent. Va. Obstetrics, 42 Va. App. at 272, 590 S.E.2d at 635-36 (quoting Code § 38.2-5001). If the party seeking application of the Act proves that the injury falls within this definition, then the Act applies. Id. at 273, 590 S.E.2d at 636.

However, "[t]he legislature, recognizing the difficulty in proving when, but not whether, such an injury was sustained, enacted a presumption to assist potential claimants in obtaining benefits." Wolfe v. Va. Birth-Related Neurological Injury Comp. Program, 40 Va. App. 565, 578, 580 S.E.2d 467, 473 (2003) (citing Code § 38.2-5008(A)(1)). A rebuttable presumption of a birth-related neurological injury applies when the proponent (in this case, appellants) proves elements one and three listed above. Cent. Va. Obstetrics, 42 Va. App. at 273, 590 S.E.2d at 636. "When these two predicate facts are proved, the factfinder may presume that elements two and four of the statutory definition are also met." Id.

Once the presumption applies, the burden of proof shifts to the party opposing the presumption (in this case, claimant and the Virginia Birth-Related Neurological Injury Fund) to disprove element two or four, and thereby establish "that the injuries alleged are not birth-related neurological injuries within the meaning of the chapter." Wolfe, 40 Va. App. at 578, 580 S.E.2d at 474 (quoting Code § 38.2-5008(A)(1)(a)).

Upon the request of a party who is a participating hospital or physician, Code § 8.01-273.1 directs a trial court to refer the case to the Commission to determine "whether the cause of action satisfies the requirements of the . . . Act." The claim "is reviewed by a panel of three qualified and

impartial physicians drawn from the fields of obstetrics, pediatrics, pediatric neurology, neonatology, physical medicine and rehabilitation, or any other specialty particularly appropriate to the facts of a particular case." Code § 38.2-5008(B). The panel prepares a report, and in its conclusion determines whether the infant's injury "does or does not satisfy each of the criteria of a birth-related neurological injury [as defined in] § 38.2-5001." Code § 38.2-5008(C). The Commission must consider, but is not bound by, the panel's recomendation. Id. "The Commission has exclusive jurisdiction to decide whether an infant's claim lies within the purview of the Act." Berner v. Mills, 265 Va. 408, 411, 579 S.E.2d 159, 160 (2003).

## II. Factual Background

Claimant filed a medical malpractice and negligence lawsuit against appellants, who requested that the case be referred to the Commission to determine application of the Act. The circuit court stayed the pending court action and referred the case to the Commission. The Virginia Birth-Related Neurological Injury Fund joined the suit, taking the claimant's position that the Act was not applicable. A panel of three independent physicians evaluated the medical evidence to determine whether the child's injury satisfied the criteria for a birth-related neurological injury under the Act. The panel members were experts in the fields of maternal-fetal medicine (Dr. Christian Chisholm), neonatology (Dr. Robert Sinkin), and developmental pediatrics (Dr. Kenneth Norwood). Their report detailed the following summary of evidence.

Crystal Senecal, a healthy twenty-six-year-old with no significant medical history, gave birth to D.S. on December 4, 2007. On that date, Senecal, who was approximately twenty-three weeks pregnant, was evaluated for abdominal pressure and found to be four centimeters dilated. She was admitted to the hospital and delivered "an extremely preterm male infant who was immediately resuscitated by Neonatology and transferred to the Neonatal Intensive Care Unit." At birth, claimant was bradycardic, flaccid, unresponsive, and required immediate resuscitation. He

- 4 -

was put on a ventilator to receive mechanical respiration.  The hospital report reflected that the child was an "extremely immature preterm baby."  Following an extended period of care in the hospital, he was discharged on April 10, 2008.  Ultimately, the panel concluded that while claimant suffered neurological injury, it was not caused by oxygen deprivation or mechanical injury during labor or delivery.  The panel found that resuscitation was necessitated by the child's prematurity.

The panel report also summarized the post-neonatal medical history and the assessments completed by the child's school system.  Doctors determined that claimant has "mild diparetic cerebral palsy."  His cognitive and developmental tests reflected a borderline range between normal intelligence and a mild intellectual disability.  Based on this evidence, the panel concluded that while claimant has some cognitive, developmental, and motoric disabilities, the evidence did not support the conclusion that he is permanently in need of assistance in all activities of daily living.  Accordingly, the panel opined that the case did not qualify for inclusion under the provisions of the Act.

A deputy commissioner reviewed the panel's report, the medical records, and heard additional evidence.  At the hearing, Dr. Michael Hermansen, a neonatologist, testified for appellants.  He stated that he believed claimant suffered "oxygen deprivation prior to the birth, during the labor and delivery process."  Dr. Joshua Alexander, who practices pediatric rehabilitation medicine, concluded that claimant's spastic diplegic cerebral palsy met the disability requirement of the statute.  Their conclusions were contradicted by the testimony of Drs. Norwood and Chisholm, who served on the panel and also testified at the hearing.

The deputy commissioner resolved the conflict in favor of claimant, and specifically found that Dr. Chisholm's opinions "are entitled to greater weight than the opinions Dr. Hermansen offered."  Accordingly, the deputy commissioner denied appellants' petition seeking relief under the Act.

The full Commission unanimously affirmed the deputy commissioner. It found that the statutory presumption applied because there was evidence that the injury was caused by oxygen deprivation and evidence that claimant "has a permanent motoric disability and a permanent developmental disability." However, the Commission held that the claimant's evidence was sufficient to rebut the presumption. The Commission determined that the "greater weight of the evidence established the infant's oxygen deprivation and subsequent brain injury occurred because of his extreme prematurity and immature lungs," not because of oxygen deprivation suffered during labor and delivery. Further, the Commission found that despite claimant's motoric and developmental disabilities, he was not permanently in need of assistance in all activities of daily living. Accordingly, the Commission affirmed the deputy commissioner and dismissed the petition.

## III. Analysis

### A. Standard of Review

"On appeal from the [C]ommission's . . . decision under the Act, we apply our usual standard of review and consider the evidence 'in the light most favorable to the prevailing party before the [C]ommission,'" in this case, the claimant. Commonwealth v. Bakke, 46 Va. App. 508, 517, 620 S.E.2d 107, 111 (2005) (quoting Cent. Va. Obstetrics, 42 Va. App. at 269, 590 S.E.2d at 634). Code § 38.2-5011(A) dictates that "[t]he determination of the Commission . . . shall be conclusive and binding as to all questions of fact."

This Court is bound by the Commission's findings of fact "if [the] findings are supported by credible evidence in the record, regardless of whether contrary evidence exists or contrary inferences may be drawn." Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 131, 510 S.E.2d 255, 261 (1999) (*en banc*). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890,

894, 407 S.E.2d 32, 35 (1991).  Further, "a question raised by 'conflicting expert medical opinions' is 'one of fact'" which must be decided by the Commission and is conclusive and binding on this Court.  Bakke, 46 Va. App. at 518, 620 S.E.2d at 112 (quoting Eccon Constr. Co. v. Lucas, 221 Va. 786, 790, 273 S.E.2d 797, 799 (1981)); see also Wolfe, 40 Va. App. at 580, 580 S.E.2d at 474.

B.  Assignment of Error 1:  Interpretation of Code § 38.2-5001

Appellants contend that the Commission erred in interpreting the provision of Code § 38.2-5001 that addresses the time period during which a birth-related neurological injury must occur for the Act to apply.  To the extent this issue involves statutory interpretation, we review the issue *de novo.*  Bennett v. Commonwealth, 60 Va. App. 656, 665, 731 S.E.2d 40, 44 (2012).

Code § 38.2-5001 states in pertinent part:

> "Birth-related neurological injury" means injury to the brain or spinal cord of an infant caused by the deprivation of oxygen . . . occurring in the course of labor, delivery *or resuscitation necessitated by a deprivation of oxygen* . . . that occurred in the course of labor or delivery.

(Emphasis added).  The emphasized language was added in a 2003 amendment; it replaced language that stated "resuscitation in the immediate post-delivery period."  Code § 38.2-5001 (2002); 2003 Va. Acts ch. 897.

Earlier, in 1999, a final sentence was added at the end of the statute.  See 1999 Va. Acts ch. 806.  It reads:

> The definition provided here shall apply retroactively to any child born on and after January 1, 1988, who suffers from an injury to the brain or spinal cord caused by the deprivation of oxygen . . . occurring in the course of labor, delivery or resuscitation in the immediate postdelivery period in a hospital.

Code § 38.2-5001.

Appellants argue that the period during which the injury may have occurred can be either during "resuscitation necessitated by a deprivation of oxygen" *or* "resuscitation in the immediate

post-delivery period." They base their interpretation on the phrase "resuscitation during the immediate postdelivery period" that appears in the final sentence of the statute added in the 1999 amendment. We disagree.

"When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." Va. Dep't of Corr. v. Surovell, 290 Va. 255, 268, 776 S.E.2d 579, 586 (2015) (quoting Payne v. Fairfax Cty. Sch. Bd., 288 Va. 432, 436, 764 S.E.2d 40, 43 (2014)). A court is "not free to add language, nor to ignore language, contained in statutes." Signal Corp. v. Keane Fed. Sys., 265 Va. 38, 46, 574 S.E.2d 253, 257 (2003).

Appellants' proposed interpretation of the statute would render meaningless the words "necessitated by a deprivation of oxygen . . . *that occurred in the course of labor or delivery*." Code § 38.2-5001 (emphasis added). This Court must assume that the General Assembly chose its words with care when drafting the statute. We cannot disregard the clear language of the statute. See Brown v. Commonwealth, 284 Va. 538, 542-43, 733 S.E.2d 638, 640 (2012).

The 2003 amendment changed the substantive requirement in the definitional section. While the previous edition of the statute only required proof that oxygen deprivation occurred during resuscitation "in the immediate postdelivery period," the amended statute requires proof that the resuscitation was "necessitated by a deprivation of oxygen . . . that occurred in the course of labor or delivery." Code § 38.2-5001. "[I]n the field of statutory construction, a presumption normally arises that a change in law was intended when new provisions are added to prior legislation by an amendatory act." Boyd v. Commonwealth, 216 Va. 16, 20, 215 S.E.2d 915, 918 (1975).

The last sentence of the statute added in the 1999 amendment merely permits a child born between January 1, 1988 and July 1, 1999 to request a rehearing of a claim that would otherwise be time-barred under the statute. It predates the substantive change made in 2003 and is not part of the definitional portion of the statute. It was not necessary for the General Assembly to modify the last sentence of the statute because it is not part of the eligibility definition, but merely grants an extension of time for a cause of action to be filed, briefly tolling the statute of limitations.

The Commission interpreted the "timing of injury" requirement of Code § 38.2-5001 in a manner consistent with the rules of statutory construction. Accordingly, we find that it did not err in determining that the relevant time for the injury to occur is when the oxygen deprivation is suffered during the course of labor or delivery or when resuscitation is *necessitated by* a deprivation of oxygen during labor or delivery.

### C. Assignment of Error II: Sufficiency of the Evidence

Appellants argue that the Commission erred in finding the evidence sufficient to rebut the statutory presumption. They also argue that the Commission erred by accepting the panel's conclusion because the panel failed to consider the presumption and therefore its conclusion was based on a lack of information. We disagree.

#### 1. Sufficiency of Evidence to Rebut the Presumption of Oxygen Deprivation

The Commission determined that although appellants met their burden of establishing the statutory presumption under Code § 38.2-5008, claimant provided sufficient evidence to rebut the presumption. To rebut the presumption, claimant was required to prove one of two elements:

> 1. The injury *did not* occur "in the course of labor, delivery or resuscitation necessitated by a deprivation of oxygen . . . that occurred in the course of labor or delivery;" or

> 2. That the infant *is not* "permanently in need of assistance in all activities of daily living."

Code § 38.2-5001; see also Wolfe, 40 Va. App. at 578, 580 S.E.2d at 474.

- 9 -

In reaching its conclusion that claimant rebutted the statutory presumption, the Commission relied on "the [p]anel report, the testimony and opinions of Dr. Chisholm, the deposition testimony of Dr. Sinkin, and the testimony and opinions of Dr. Norwood." Although the Commission considered the conclusions of Dr. Hermansen, appellants' expert, it specifically found the testimony of Dr. Chisholm, the only obstetrician who testified, more persuasive. Dr. Chisholm opined that the claimant's injury did not occur as a result of oxygen deprivation suffered during labor or delivery, or as a result of resuscitation necessitated by oxygen deprivation during the course of labor or delivery, but rather because of the claimant's extreme prematurity and immature lungs.

"Questions raised by conflicting medical opinions must be decided by the [C]ommission." Wolfe, 40 Va. App. at 580, 580 S.E.2d at 474 (quoting Penley v. Island Creek Coal Co., 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989)). "This appellate deference is not a mere legal custom, subject to a flexible application, but a statutory command making clear that the [C]ommission's decision 'shall be conclusive and binding as to all questions of fact.'" Cent. Va. Obstetrics, 42 Va. App. at 279, 590 S.E.2d at 639 (quoting Code § 38.2-5011(A)). Medical evidence is "subject to the [C]ommission's consideration and weighing." Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 214 (1991).

Here, the Commission's conclusions were based on credible evidence; both the panel's written report and Dr. Chisholm's testimony supported the Commission's determination. The Commission is the fact-finder and in giving its decision the appropriate deference, we find that it did not err in its determination that there was "no event during labor and delivery associated with injurious oxygen deprivation."

2. Sufficiency of the Evidence to Prove Extent of Disability

Appellants contend that the evidence was insufficient to rebut the presumption that the child will always need assistance in all activities of daily living. The Commission relied on the opinions

of Dr. Alexander and Dr. Norwood and concluded that while claimant's disabilities might require him to utilize adaptive equipment to complete each activity of daily living, the use of this equipment did not equate to requiring "assistance" in the activities of daily living. In making its finding that claimant had rebutted the presumption, the Commission noted from Dr. Norwood's opinion that because the child's IQ was in the mid-70s and due to "his relatively good upper extremity function . . . [claimant will] be able to independently prepare, set up and clean up simple meals," "will make transfers independently," and will not "remain totally dependent upon others for his care throughout his life." Again, the Commission's findings of fact on this issue are supported by credible evidence and we find that the Commission did not err in its conclusion.

### 3. Panel's Consideration of the Presumption

Appellants contend that the Commission erred because the panel members did not consider the statutory presumption when reaching their medical conclusions. However, appellants incorrectly assign a duty to the panel to make a legal determination that is properly reserved to the Commission.

Code § 38.2-5008 only requires that the panel members review the claim and prepare a report that "provides a detailed statement of the opinion of the panel's members regarding whether the infant's injury does or does not satisfy each of the criteria of a birth-related neurological injury enumerated in such term's definition in § 38.2-5001." The Code does not require the panel to apply a statutory presumption. It is the Commission's duty to determine whether the presumption applies and if so, whether it is rebutted. Pursuant to Code § 38.2-5008:

> A. *[t]he Commission shall determine,* on the basis of the evidence presented to it, the following issues:
>> 1. Whether the injury claimed is a birth-related neurological injury as defined in § 38.2-5001.
>>> a. A rebuttable presumption shall arise . . . . If either party disagrees with such presumption, that party shall have the burden of proving that the

- 11 -

injuries alleged are not birth-related neurological
injuries within the meaning of the chapter.

(Emphasis added). The legislature left the legal determination of whether the presumption applies to the Commission, not the panel.

The Commission properly made a finding concerning application of the presumption and its rebuttal. This finding was based on factual determinations, supported by credible evidence. "The Commission's factual findings are 'conclusive and binding . . . and a question raised by 'conflicting expert medical opinions' is one of fact." Eccon Constr. Co., 221 Va. at 790, 273 S.E.2d at 799 (quoting Johnson v. Capitol Hotel, 189 Va. 585, 590, 54 S.E.2d 106, 109 (1949)). Accordingly, we find that the Commission did not err in holding that the Commission, not the panel, was the proper body to determine whether the presumption applied.

IV. Conclusion

For the above reasons, the decision of the Commission is affirmed.

Affirmed.