COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Beales and Decker
Argued by teleconference

PUBLISHED

PARAMONT COAL COMPANY VIRGINIA, LLC AND
  BRICKSTREET MUTUAL INSURANCE COMPANY
                                                    OPINION BY
v.      Record No. 0710-18-3          JUDGE MARLA GRAFF DECKER
                                                    OCTOBER 30, 2018
DEWEY J. McCOY


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Timothy W. Gresham (Kendra R. Prince; Penn, Stuart & Eskridge,
            on briefs), for appellants.

            Paul L. Phipps (Paul L. Phipps, P.C., on brief), for appellee.


        Paramont Coal Company Virginia, LLC, and its insurer (collectively the employer)

appeal the Workers' Compensation Commission's award of disability benefits to Dewey McCoy

(the claimant). The employer argues that the Commission erred by approving the claimant's

request for permanent disability benefits even though he did not present evidence establishing

sufficient pulmonary function loss as required by Code § 65.2-504. The medical documents

submitted by the claimant demonstrate that loss according to approved medical tests and

standards as required by the statute. Further, the evidence in the record supports the

Commission's factual finding that the claimant demonstrated sufficient pulmonary loss. The

weight and credibility to be given to the evidence were matters within the Commission's purview

as fact finder. Consequently, we affirm the Commission's decision.

## I. BACKGROUND[1]

The claim for workers' compensation benefits underlying this appeal was based on the claimant's pneumoconiosis.[2] The claimant suffered loss of lung function due to his exposure to coal dust over the course of his thirty-two years of employment in a coal mine. In early 2016, the Commission awarded the claimant benefits for his pneumoconiosis, which was determined as being at stage one at that time.

In September 2016, Dr. Vishal Raj evaluated the claimant. At the time, the claimant complained of worsening shortness of breath despite prescribed oxygen therapy and use of bronchodilators. Raj reviewed the claimant's symptoms and medical history. He conducted a physical examination and ordered a pulmonary stress test that was performed that day. Dr. Raj "advised" the claimant "not to work under conditions where [the claimant would] have coal dust or other dust/fume exposure."

A February 2, 2017 pulmonary function test conducted by Dr. Elie T. Nader showed "[m]oderately severe restrictive airway disease with decrease in diffusing capacity reflecting underlying chronic restrictive lung disease."

A chest CT, ordered by Dr. Raj, was performed on February 3, 2017. The chest CT established that both of the claimant's lungs had "nodular densities," measuring up to 5.4 millimeters. The CT also showed small growth in numerous densities since the 2015 study.

---

[1] On appeal from the Commission, "'we view the evidence in the light most favorable to the prevailing party' before the [C]ommission," in this case, the claimant. See Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577 S.E.2d 538, 539 (2003) (quoting Tomes v. James City Fire, 39 Va. App. 424, 429, 573 S.E.2d 312, 315 (2002)).

[2] "Coal worker's pneumoconiosis is a disease of the lung that results from the accumulation of coal dust in the lungs." Clinchfield, 40 Va. App. at 72, 577 S.E.2d at 539 (quoting Penley v. Island Creek Coal Co., 8 Va. App. 310, 312, 381 S.E.2d 231, 233 (1989)). Four physicians and a pulmonary committee reviewed the claimant's 2014 chest x-ray film and determined that he had pneumoconiosis. See generally 16 VAC 30-50-110 (governing pulmonary committees). The employer does not dispute this diagnosis on appeal.

During the claimant's February 7, 2017 follow-up with Dr. Raj's office, a PET-CT scan was ordered due to the irregular densities shown on the chest CT.[3] The PET-CT, administered March 3, 2017, revealed "low level activity" related to the claimant's pneumoconiosis.

In 2017, the claimant sought permanent total disability benefits. At the employer's request, a different physician, Dr. Roger McSharry, examined the claimant and performed additional pulmonary function testing. He had not reviewed the claimant's complete medical file or looked at his chest x-ray images. McSharry concluded that the claimant's limited lung capacity demonstrated "a dramatic improvement" following prescribed bronchodilator use. He opined that the claimant's lung condition did not prevent him from performing manual labor in a dusty environment.

Following a review of the parties' stipulations and the evidentiary record, a deputy commissioner awarded the claimant permanent total disability benefits under Code § 65.2-504(A)(4). The employer requested review by the Commission. The Commission affirmed the decision of the deputy commissioner, with one commissioner dissenting.

The employer appeals the Commission's award of permanent benefits to the claimant.

## II. ANALYSIS

On appeal, the employer argues that the Commission erred by finding that the claimant's pulmonary impairment met the standards required by Code § 65.2-504(A)(4) for permanent disability.

---

[3] A CT, computed tomography, is a "computerized x-ray scanning system that produce[s] a sectional anatomic image." CT and tomography, computed t, Taber's Cyclopedic Medical Dictionary (23d ed. 2013). A PET-CT is "positron emission tomography" used together with "computed tomography . . . to identify metastases in patients with cancer." PET-CT, Taber's, supra.

A. Standard of Review and Statutory Framework

Generally, a claimant has the burden of proving by a preponderance of the evidence that he is entitled to workers' compensation. See Bergmann v. L & W Drywall, 222 Va. 30, 32, 278 S.E.2d 801, 802 (1981); see also Blue Diamond Coal Co. v. Pannell, 203 Va. 49, 53, 122 S.E.2d 666, 669 (1961) (holding that a claimant suffering from pneumoconiosis must prove by a preponderance of the evidence "in whose employment he was last injuriously exposed"). But see Code § 65.2-504(C) (providing that a claimant suffering from pneumoconiosis is entitled to a presumption that the condition is "coal worker's pneumoconiosis" if the claimant had "injurious exposure to coal dust"). This requirement includes the principle that the "party seeking workers' compensation bears the burden of proving his disability." Vital Link, Inc. v. Hope, 69 Va. App. 43, 64, 814 S.E.2d 537, 547 (2018). However, at this juncture, as the appellant in this case, the employer bears the "burden of showing that reversible error was committed" by the Commission. See Burke v. Catawba Hosp., 59 Va. App. 828, 838, 722 S.E.2d 684, 689 (2012).

On appeal, "'we view the evidence in the light most favorable to the prevailing party' before the [C]ommission," here, the claimant. See Clinchfield Coal Co. v. Reed, 40 Va. App 69, 72, 577 S.E.2d 538, 539 (2003) (quoting Tomes v. James City Fire, 39 Va. App. 424, 429, 573 S.E.2d 312, 315 (2002)). "[W]e defer to the [C]ommission in its role as fact finder . . . ." Id. In that role, "the [C]ommission resolves all conflicts in the evidence and determines the weight to be accorded the various evidentiary submissions." Montalbano v. Richmond Ford, LLC, 57 Va. App. 235, 252, 701 S.E.2d 72, 80 (2010) (quoting Bass v. City of Richmond Police Dep't, 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999)). The trier of fact is responsible for weighing all aspects of expert witness evidence, including the witness' credentials and possible bias. See, e.g., Ford v. Ford, 200 Va. 674, 679, 107 S.E.2d 397, 401 (1959) (explaining that an expert witness' "possible bias" affects the weight to be given the testimony); Seneca Falls Greenhouse

& Nursery v. Layton, 9 Va. App. 482, 486-87, 389 S.E.2d 184, 187 (1990) (holding that a witness' lack of a medical license was a matter for the trier of fact to consider in weighing her expert opinion).  Further, the Commission's factual findings are "conclusive and binding" if supported by credible evidence.  Jackson v. Ceres Marine Terminals, Inc., 64 Va. App. 459, 463, 769 S.E.2d 276, 278 (2015) (quoting VFP, Inc. v. Shepherd, 39 Va. App. 289, 292, 572 S.E.2d 510, 511 (2002)).

These principles apply "even [if] there is evidence in the record to support a contrary finding."  City of Waynesboro v. Griffin, 51 Va. App. 308, 317, 657 S.E.2d 782, 786 (2008) (quoting Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986)).  It is well established that this Court "does not retry the facts, reweigh . . . the evidence, or make its own determination of the credibility of the witnesses."  Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

In contrast, an appellate court reviews the Commission's interpretation of a statute *de novo* if the "issue involves a pure question of statutory interpretation."  Jones v. Commonwealth ex rel. Moll, 295 Va. 497, 503, 814 S.E.2d 192, 194 (2018) (emphasis omitted) (quoting Commonwealth v. Barker, 275 Va. 529, 536, 659 S.E.2d 502, 505 (2008)).  A general rule of statutory construction is that "[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language."  Hammer v. D.S., 67 Va. App. 388, 399, 796 S.E.2d 454, 459 (2017) (quoting Va. Dep't of Corr. v. Surovell, 290 Va. 255, 268, 776 S.E.2d 579, 586 (2015)); see also Jones, 295 Va. at 502, 814 S.E.2d at 194 (noting exception if application of the plain meaning rule would lead to an absurd result).  In addition, we are to "construe the Workers' Compensation Act liberally for the benefit of employees to effectuate its remedial purpose of making injured workers whole."  Vital Link, 69 Va. App. at 53, 814 S.E.2d at 542 (quoting Advance Auto v. Craft, 63 Va. App. 502, 514, 759 S.E.2d 17, 23 (2014)).

Code § 65.2-504(A)(4), in pertinent part, provides that an employee's pneumoconiosis qualifies as a "permanent disability" if it is "accompanied by sufficient pulmonary function loss as shown by approved medical tests and standards to render an employee totally unable to do manual labor in a dusty environment." The subsection also requires that the employee be "instructed by competent medical authority not to attempt to do work in any mine or dusty environment" and that the employee "in fact not [be] working." Id.

On appeal, the employer does not dispute that the claimant suffered damage to his lungs or that he has pneumoconiosis. It challenges the Commission's conclusion that the claimant met his burden of proving sufficient pulmonary loss "as shown by approved medical tests and standards" as required by Code § 65.2-504(A)(4). The employer also argues that he failed to show that his pulmonary function loss renders him "totally unable to do manual labor in a dusty environment" in order to qualify for permanent disability. See Code § 65.2-504(A)(4).

## B. Approved Medical Tests and Standards

The employer argues that the claimant failed to present evidence sufficient to meet the "approved medical tests and standards" prong of Code § 65.2-504(A)(4). Consideration of this assignment of error requires discussion of the relevant statutory language as well as analysis of the application of the statute to the facts of this case.

### 1. Statutory Interpretation

To qualify as a permanent disability, the plain language of the statute requires that (1) the claimant has "sufficient pulmonary function loss as shown by approved medical tests and standards to render an employee totally unable to do manual labor in a dusty environment," (2) the claimant has been instructed to no longer work in a mine or dusty environment, and (3) he or she is in fact no longer doing so. Code § 65.2-504(A)(4). The Virginia Code does

- 6 -

not define "approved medical tests and standards," nor has the Commission promulgated any regulations explaining or defining the terms or phrase.[4]

We "assume that the General Assembly chose, with care, the words it used in enacting the statute" at issue. See City of Richmond v. Va. Elec. & Power Co., 292 Va. 70, 75, 787 S.E.2d 161, 163 (2016) (quoting Kiser v. A.W. Chesterton Co., 285 Va. 12, 19 n.2, 736 S.E.2d 910, 915 n.2 (2013)). Based on the plain language of Code § 65.2-504(A)(4), we are left to conclude that the legislature intentionally placed no limitations on the phrase "approved medical tests and standards." This, of course, allows application of the statute to readily adapt to changes in the medical field. "Relying on the 'specialized competency'" of the Commission, the legislature "did not restrict" its "judgment to any decision[-]making formula." See French v. Va. Marine Res. Comm'n, 64 Va. App. 226, 237, 767 S.E.2d 245, 251 (2015) (quoting Palmer v. Commonwealth Marine Res. Comm'n, 48 Va. App. 78, 86, 628 S.E.2d 84, 88 (2006)) (discussing the Marine Resources Commission); see also Williams v. Capital Hospice, 66 Va. App. 161, 167, 783 S.E.2d 67, 69 (2016) (recognizing the "specialized competence" of the Workers' Compensation Commission).

Interpreting the statute and applying the plain meaning of "approved medical tests and standards" is a question of law. See RGR, LLC v. Settle, 288 Va. 260, 294, 764 S.E.2d 8, 28 (2014). However, determining specifically whether the evidence presented meets the prong of "approved medical tests and standards" is a question of fact to be determined by the Commission under the circumstances of each case. See generally Uninsured Employer's Fund v. Gabriel, 272 Va. 659, 662, 636 S.E.2d 408, 411 (2006) (explaining that determining a definition is a matter of law while determining whether the particular circumstances at issue fall within that definition is

---

[4] Notably, the legislature has defined other terms in the context of workers' compensation. See, e.g., Code §§ 65.2-101, -400.

"usually a question of fact" (quoting <u>Baker v. Nussman</u>, 152 Va. 293, 298, 147 S.E. 246, 247 (1929))).

The words in the statute are plain and unambiguous. Pulmonary function loss "as shown by approved medical tests and standards" refers to the method by which a claimant must prove the pulmonary function loss to the satisfaction of the fact finder.[5] Code § 65.2-504(A)(4). The statute requires evidence of approved medical tests and standards demonstrating the claimant's pulmonary function loss. The remainder of the relevant language, "to render an employee totally unable to do manual labor in a dusty environment," simply describes the degree of pulmonary function loss necessary to qualify as a permanent disability. <u>Id.</u>

The employer proposes that the statutory language requires that the approved medical tests be conducted according to some sort of independent approved standards. However, the plain language of the subsection does not require that a claimant prove his or her disability by approved medical tests "conducted according to" established standards. Code § 65.2-504(A)(4). The proposed construction of the subsection would require additional language in the statute that the legislature did not include. <u>Dodge v. Trs. of Randolph-Macon Woman's College</u>, 276 Va. 10, 16, 661 S.E.2d 805, 808 (2008) (explaining that "we are not free to add language" to a statute (quoting <u>BBF, Inc. v. Alstom Power, Inc.</u>, 274 Va. 326, 331, 645 S.E.2d 467, 469 (2007))). As a result, this argument cannot prevail.

---

[5] "Approve" is defined, in pertinent part, as "[t]o give formal sanction to; to confirm authoritatively." <u>Approve</u>, <u>Black's Law Dictionary</u> (10th ed. 2014). A "test" in the medical context is "[a] medical examination on part of one's body, usu[ally] administered for diagnostic reasons." <u>Test</u>, <u>Black's Law Dictionary</u>, <u>supra</u>. A "[s]tandard" is defined, in pertinent part, as "[a] model accepted as correct by custom, consent, or authority." <u>Standard</u>, <u>Black's Law Dictionary</u>, <u>supra</u>; <u>see also</u> <u>Standard</u>, <u>Webster's Third New International Dictionary</u> (1993) (defining the term in part as "constituting or affording a standard for comparison, measurement, or judgment").

Alternatively, the employer proposes that the subsection requires an expert medical opinion that the claimant cannot work in a dusty environment due to pulmonary function loss "based on" approved medical tests. However, the plain language of the statute does not contain such a "based on" requirement. Again, if the legislature had intended the subsection to require *an expert medical opinion based on* "approved medical tests and standards," it would have included language to that effect. See Code § 65.2-504(A)(4). Instead, the statute makes clear that in order to qualify for permanent disability, a claimant must demonstrate that he or she sustained "sufficient pulmonary function loss as shown by approved medical tests and standards to render" him or her "totally unable to do manual labor in a dusty environment," as well as demonstrate that he or she was "instructed by competent medical authority not to attempt to do work in any mine or dusty environment." Id.

The statute does not require a duly qualified physician to use specific tests to diagnose a claimant's pulmonary function loss. It also does not exclude the possibility that a physician may make a diagnosis based on factors other than the specific "approved medical tests and standards" by which the claimant seeks to prove the extent of his or her pulmonary loss.[6] No applicable statute mandates that an expert opinion that an employee is medically unfit to perform manual labor in a dusty environment is valid only if he or she gives that opinion *after* the administration

---

[6] A physician may base a medical opinion that an employee is unfit to perform manual labor in a dusty environment on tests and standards considered appropriate by the physician. The bases upon which a doctor has formed his or her medical opinion affect the weight assigned to that opinion by the trier of fact. See Amelia Sand Co. v. Ellyson, 43 Va. App. 406, 410, 598 S.E.2d 750, 752 (2004) (noting that the fact that a doctor does not have the employee's "full medical history" does not render his or her expert opinion invalid unless the expert later revises and rejects the earlier opinion). A claimant may submit additional test results to support the diagnosis, even if the physician did not review those results. In this case, before the claimant's 2017 pulmonary function tests and CTs were administered, Dr. Raj examined him, managed his medications, and instructed him to not return to the mines. The deputy commissioner and the Commission were both able to consider this timeline in evaluating Raj's medical opinion. The Commission acted within its purview as fact finder in accepting Dr. Raj's expert opinion.

of approved medical tests and standards demonstrating the requisite pulmonary function loss. Cf. Levick v. MacDougall, 294 Va. 283, 292, 805 S.E.2d 775, 779 (2017) (holding that the party's argument failed in part because the marriage statutes did not address the order in which solemnization and obtaining a license were required to occur). The statutory requirement that a physician instruct an employee to no longer work in a mine or dusty environment is separate from the requirement that the employee demonstrate sufficient pulmonary loss as shown by approved medical tests and standards.[7] See Code § 65.2-504(A)(4).

For these reasons, the employer's argument that Code § 65.2-504(A)(4) requires an expert medical opinion that the claimant cannot work in a dusty environment due to pulmonary function loss *and* proof that the opinion is *based on* "approved medical tests" fails. Had the General Assembly intended such requirements, the statute would include the necessary language.

The words in the statute are plain and unambiguous. Pulmonary function loss "as shown by approved medical tests and standards" refers to the method by which a claimant must prove the pulmonary function loss. Code § 65.2-504(A)(4). It suggests only that the claimant provide medical proof to support the conclusion. The remainder of the relevant subsection, "to render an employee totally unable to do manual labor in a dusty environment," simply describes the degree of pulmonary function loss necessary to qualify as a permanent disability. Id.

### 2. Application of the Statute to the Facts of this Case

Next, we consider whether the record supports the Commission's finding that "approved medical tests and standards" demonstrated that the claimant suffered sufficient pulmonary loss. The documents that the claimant submitted in support of his claim include a pulmonary function report, which documents a pulmonary function test, and two CTs. A "pulmonary function test"

---

[7] We recognize that the two elements are related because such an instruction from a physician may often be based on the same diagnostics entered into evidence in support of the employee's claim.

is "[o]ne of several different tests used to evaluate the condition of the respiratory system." Pulmonary function test, Taber's Cyclopedic Medical Dictionary (23d ed. 2013). Specifically, such a test "[m]easures . . . expiratory flow and lung volumes and capacities." Id. According to the employer's own expert, pulmonary function studies are "standard tests for determining impairment in pulmonary medicine." In addition, CTs are accepted tests for diagnosing pneumoconiosis. See 16 VAC 30-50-110 (discussing x-ray evidence of pneomoconiosis); see also Int'l Labour Office, Guidelines for the Use of the ILO International Classification of Radiographs of Pneomoconioses, in 22 Occupational Safety and Health Series, at vii, 14 (rev. ed. 2011) (providing international standards for classifying "digital radiographic images of the chest" in pneumoconiosis patients).

Related federal standards further support this conclusion. See Chitwood v. E.I. Du Pont de Nemours & Co., 29 Va. App. 611, 614, 513 S.E.2d 890, 892 (1999) (explaining that "Code § 65.2-504(B) was enacted pursuant to a federal mandate under . . . the Federal Coal Mine Health and Safety Act of 1969, to enact a uniform federal program for coal miners afflicted with 'black lung'"). The United States Department of Labor promulgated regulations setting out the medical criteria for demonstrating that a claimant is "totally disabled due to pneumoconiosis" for purposes of a federal claim.[8] See 20 C.F.R. § 718.2; 20 C.F.R. § 718.204. The relevant federal regulation provides, in pertinent part, that the pulmonary function criteria for total disability of a miner of the claimant's sex, age, and height include an FEV1 of 2.31 or less and an FVC of 2.92 or less. See 20 C.F.R. § 718.204(b)(2), Tables B1, B3. Dr. Nader's pulmonary function report

---

[8] Under the federal system, a miner is considered totally disabled if unable to work in a coal mine and engage in comparable work in the same geographical area. 20 C.F.R. § 718.204(b)(1). The federal regulation provides certain pulmonary function values that qualify a miner for total disability "in the absence of contrary probative evidence." 20 C.F.R. § 718.204(b)(2).

shows that even after use of the bronchodilator, the claimant's FEV1 was 2.47 and his FVC was 3.12, both of which fall below the federal standards for these values.

Based on this record, the Commission did not err by accepting the claimant's evidence as "approved medical tests and standards" showing pulmonary function loss rendering him "unable to do manual labor in a dusty environment." See Code § 65.2-504(A)(4).

### C. Ability to Do Manual Labor in Dusty Environment

The employer also argues that the claimant failed to prove that he was unable to perform manual labor in a dusty environment due to his lung disease. It suggests that the Commission did not have the authority to draw a factual inference regarding the level of lung function loss and thus could not make such a finding in the absence of an express medical opinion to that effect.

The standard of review makes clear that we are bound by the factual findings made by the Commission as long as credible evidence supports these findings. Wagner, 12 Va. App. at 894, 407 S.E.2d at 35. In addition, "[t]he [C]ommission is authorized to draw reasonable inferences from the evidence, and on appeal, we will not disturb reasonable inferences drawn by the [C]ommission from the facts proven by the evidence presented." Turf Care, Inc. v. Henson, 51 Va. App. 318, 324, 657 S.E.2d 787, 789-90 (2008) (citation omitted); see also Va. Tree Harvesters, Inc. v. Shelton, 62 Va. App. 524, 534, 749 S.E.2d 556, 561 (2013) (noting that the Commission may rely on circumstantial evidence).

It is apparent from the opinion of the Commission that it carefully considered the evidence, including the claimant's medical history. Credible evidence in the record supports the Commission's findings. The claimant suffered from pneumoconiosis as a result of his thirty-two-year career as a miner. To treat his condition, the claimant used supplemental oxygen and prescription bronchodilators. Nonetheless, he experienced wheezing, coughing, and

shortness of breath. A pulmonary function study revealed "[m]oderately severe restrictive airway disease with decrease in diffusing capacity reflecting underlying chronic restrictive lung disease." CTs showed nodular and irregular densities in the claimant's lungs. When the 2017 CT was compared to the 2015 CT, growth of some of the densities was measurable. Fumes and dust were listed as exacerbating factors for the claimant's disease. Dr. Raj examined the claimant, had him undergo a pulmonary stress test, and managed his prescribed medications. In the course of treatment, Raj advised the claimant not to work in a mine again. The Commission's inference—that the claimant's pulmonary function loss was sufficient to prevent him from performing manual labor in a dusty environment—was reasonable under the facts that are in the record.

The employer makes several arguments relating to the Commission's decision not to credit Dr. McSharry's opinion that the claimant was able to work in a dusty environment. Most of these arguments relate to the manner in which the Commission weighed the evidence.

The credibility of an expert witness and the weight assigned to an expert opinion are factual matters within the purview of the Commission. Great N. Nekoosa Corp. v. Wood, 37 Va. App. 54, 63, 553 S.E.2d 555, 559 (2001). It is the Commission's duty to resolve "[q]uestions raised by conflicting medical opinions." Commonwealth v. Bakke, 46 Va. App. 508, 518, 620 S.E.2d 107, 112 (2005) (quoting Cent. Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield 42 Va. App. 264, 279, 590 S.E.2d 631, 639 (2004)) (noting that contrary evidence in the record is inconsequential if credible evidence supports the Commission's factual findings).

The employer suggests that the Commission's acceptance of part of McSharry's evaluation should have foreclosed it from rejecting McSharry's ultimate opinion regarding the claimant's ability to work in a dusty environment. However, the Commission, as trier of fact, was "not required to accept a party's evidence in its entirety" but was "free to believe or

- 13 -

disbelieve, in whole or in part," the evidence of "any witness." See English v. Commonwealth, 43 Va. App. 370, 371, 598 S.E.2d 322, 323 (2004). Consequently, the Commission had the discretion to believe part of the McSharry evidence while rejecting other parts of it.

The employer also argues that the Commission impermissibly discounted McSharry's opinion simply because he was an independent medical expert. McSharry observed that the claimant's baseline lung capacity "measured extremely low" and "appeared to show a severe restriction." He acknowledged that some of the diagnostics "look[ed] like" coal worker's pneumoconiosis. However, McSharry disagreed with that diagnosis, an opinion that contradicted Dr. Raj as well as the four physicians who had reviewed the claimant's 2014 chest x-ray. Based on his recorded improvement of the claimant's lung function following use of a prescribed bronchodilator, McSharry suggested that either the claimant "poor[ly] perform[ed]" on the baseline test or exhibited a "remarkable response to the bronchodilator." McSharry's pulmonary function examination of the claimant yielded different results than Dr. Nader's, who found no improvement after treatment with the bronchodilator. Dr. McSharry concluded that the claimant "may have a very mild respiratory or pulmonary impairment," in contrast to Dr. Nader's diagnosis of a "[m]oderately severe restrictive airway disease." McSharry had not reviewed the claimant's complete medical file or looked at his chest x-ray images. In addition, McSharry stated that he was often hired to perform exams for employers but never for employees. The Commission acted within its role as fact finder when it rejected Dr. McSharry's opinion that the claimant could work in a dusty environment. See Ga.-Pac. Corp. v. Robinson, 32 Va. App. 1, 4-9, 526 S.E.2d 267, 268-70 (2000) (affirming the Commission's rejection of one expert opinion in favor of another).

Further, the employer's suggestion that Dr. Raj was not a treating physician is not supported by the record. See generally Gilbane v. Guzman, 59 Va. App. 128, 135, 717 S.E.2d

- 14 -

433, 437 (2011) (recognizing that the Commission is entitled to give the opinion of the treating physician "great weight"). At the time that Dr. Raj advised the claimant to abstain from work in a dusty environment, he was "[m]anag[ing]" the claimant's dyspnea and related medical treatment.[9] Cf. Lee v. Bourgeois, 252 Va. 328, 332-33, 477 S.E.2d 495, 497-98 (1996) (reversing the trial court's ruling that defendant medical doctor's "function was that of 'a teacher and consultant to residents, as opposed to a treating physician administering medical care to patients'"). Consequently, the record supports a finding that Dr. Raj was a treating physician.

The employer contends that the Commission was obligated to accept McSharry's opinion because it was the "only evidence which address[ed] the issue central to the claim." It suggests that the claimant did not present sufficient evidence because Dr. Raj did not provide an express opinion that the claimant was physically unable to work in a dusty environment. However, we do not "require[e] a physician to use . . . magic words." Bakke, 46 Va. App. at 527, 620 S.E.2d at 116 (quoting Island Creek Coal Co. v. Breeding, 6 Va. App. 1, 11-12, 365 S.E.2d 782, 788 (1988)). The relevant subsection of the Virginia Code does not require an expressly stated physician's opinion that a claimant's condition meets the criteria for permanent disability. See Code § 65.2-504(A)(4). Rather, the Commission was entitled to infer the severity of disability based on the entirety of the evidence.[10] The Commission recognized that Dr. Raj did not expressly state that the claimant was "totally unable to do manual labor in a dusty environment,"

---

[9] Dyspnea is "difficult or uncomfortable breathing, resulting in shortness of breath." Childress v. Colvin, 845 F.3d 789, 790 (7th Cir. 2017); see also AMA, Guides to the Evaluation of Permanent Impairment § 5.2a, at 78 (Robert D. Rondinelli et al. eds., 6th ed. 2008) (listing dyspnea as "the most common presenting symptom in patients with pulmonary impairment"); Dyspnea, Taber's, supra, (defining "dyspnea" as "[l]abored or difficult breathing").

[10] The Commission is even permitted to make a finding of medical causation in the absence of expert medical opinion evidence. Dollar Gen. Store v. Cridlin, 22 Va. App. 171, 176-77, 468 S.E.2d 152, 154-55 (1996), cited with approval in Farmington Country Club, Inc. v. Marshall, 47 Va. App. 15, 26, 622 S.E.2d 233, 239 (2005).

but it inferred the claimant's condition from the evidence as a whole. The Commission acted within its purview as fact finder and as authorized by the statute in finding that the claimant's pulmonary disability rendered him unable to do manual work in a dusty environment.

Contrary to the employer's assertions, the claimant presented medical evidence central to his claim that conflicted with McSharry's opinion that the claimant did not suffer pulmonary function loss sufficient to qualify for permanent disability benefits. Viewing the evidence in the light most favorable to the claimant, as the prevailing party before the Commission, the record supports the Commission's factual finding that the claimant's pulmonary function loss was sufficient to prevent him from performing manual labor in a dusty environment.[11]

Accordingly, the Commission did not err in awarding the claimant permanent disability under Code § 65.2-504(A)(4). Therefore, we affirm the Commission's decision.

### III. CONCLUSION

The record supports the Commission's conclusion that the claimant met his burden of proving sufficient pulmonary function loss "as shown by approved medical tests and standards." In addition, the Commission's finding that the claimant's pneumoconiosis renders him unable to perform manual labor in a dusty environment is supported by credible evidence in the record. Consequently, we affirm the Commission's decision.

<u>Affirmed.</u>

---

[11] The parties both cite <u>Four "O" Mining Corp. v. Deel</u>, No. 0083-17-3, 2017 Va. App. LEXIS 158 (Va. Ct. App. June 27, 2017), as persuasive authority. <u>See, e.g.</u>, <u>Coffman v. Commonwealth</u>, 67 Va. App. 163, 172 n.7, 795 S.E.2d 178, 182 n.7 (2017) (explaining that unpublished Court of Appeals opinions may be cited as persuasive authority but are not binding precedent). We have reviewed this case, and in light of the published authority, this opinion does not alter our analysis.