COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, O'Brien and Senior Judge Haley
Argued at Fredericksburg, Virginia

UNPUBLISHED

REBECCA HICKS

v.        Record No. 1674-18-4

GIANT LANDOVER, AHOLD USA, INC. AND
 MAC RISK MANAGEMENT, INC.

MEMORANDUM OPINION[*] BY
JUDGE MARY GRACE O'BRIEN
JUNE 4, 2019

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

David L. Bayne, Jr. (Ashcraft & Gerel, LLP, on brief), for appellant.

Padraic K. Keane (Jordan Coyne LLP, on brief), for appellees.


Rebecca Hicks ("claimant") appeals a decision by the Workers' Compensation Commission awarding her permanent partial disability benefits based on a finding that she had a 7% impairment of her right lower extremity.  Claimant contends that the Commission erred by disregarding the opinion of Dr. John Bruno, who concluded that her impairment rating was 50%, and accepting the medical opinion of Dr. Mehrdad Malek, offered on behalf of Giant Landover, Ahold USA, Inc., and MAC Risk Management, Inc. (collectively, "employer").  Finding no error, we affirm the award.

BACKGROUND

On March 2, 2009, claimant injured her left knee while working for employer.  A deputy commissioner found that she proved a compensable injury and awarded her medical and temporary total disability benefits in June 2011.  Following various medical treatments, claimant underwent a left knee replacement on September 27, 2011.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Claimant suffered from pre-existing right knee problems. Her medical history preceding the 2009 work accident included injuries to her right anterior cruciate ligament ("ACL") and meniscus, multiple surgeries, and degenerative osteoarthritis. She also experienced significant pain and "mechanical dysfunction" in her right knee and had mobility issues.

Claimant's right knee condition worsened due to additional weight-bearing from her left knee replacement surgery. An orthopedic specialist recommended a total replacement of her right knee. Claimant filed a claim for treatment, including a right knee replacement, as a "compensable consequence" of the workplace injury to the left knee. Following an evidentiary hearing, a deputy commissioner issued an opinion on May 31, 2012, finding that "the right knee condition is, at least in part, attributable to the compensable injury and that treatment for the right knee, including surgery, is the responsibility of [employer]." Employer did not appeal, and claimant ultimately underwent a total right knee replacement.

On May 8, 2015, claimant filed a request for permanent partial disability benefits "based upon the loss of use of both legs" and specifically requested an award for 50% impairment of her left leg and 50% impairment of her right leg. In support, she offered the report of an independent medical examination ("IME") by Dr. John Bruno, dated March 30, 2015. Dr. Bruno had examined claimant and reviewed her medical records, which he did not detail but characterized generally as "voluminous." He reached the following conclusion:

> [Claimant] has permanent physical impairment of each lower extremity. Her left knee functions slightly better than her right knee. She has reached [maximum medical improvement].
>
> As a consequence [of her] compensable injury[,] she has 50% permanent physical impairment of the left lower extremity and 50% permanent physical impairment of the right lower extremity.

Dr. Bruno noted that these ratings were based on the American Medical Association ("AMA") guidelines.

Employer obtained an IME of claimant by Dr. Mehrdad Malek on July 16, 2015. After examining claimant and reviewing her medical records, Dr. Malek determined that her left knee impairment was work-related, but her right knee impairment was not. He noted that claimant's medical history included multiple surgeries on her right knee. He opined that the right knee condition and joint replacement resulted from a pre-existing arthritic condition and was "not related to the work injury of March 2, 2009." He assessed a 37% impairment rating for the left extremity based on AMA guidelines.

Dr. Malek amended his impairment rating for claimant's right extremity on September 17, 2015. Although his prior report concluded that arthritis caused claimant's right knee impairment, Dr. Malek "realiz[ed] the causality already had been determined judicially by a May 31, 2012 decision in the Virginia [Workers'] Compensation Commission." Accordingly, Dr. Malek concluded as follows:

> [Claimant] has 37% permanent partial impairment of her right lower extremity from which 30% is related to her pre[-]existing osteoarthritis and 7% as a result of right knee arthroplasty and morbidity associated with it.

The parties stipulated to an order that awarded claimant permanent partial disability benefits based upon 40% impairment of her left leg, in exchange for withdrawal of her claim concerning the right leg.

On April 4, 2017, claimant filed a "change in condition" claim seeking an award of permanent partial disability for loss of use of her right leg. Claimant relied on the medical records and IMEs submitted in 2015 and asserted that "[b]ecause the [e]mployer was held responsible for the right knee replacement, it is also responsible for the impact that replacement has on the functionality of claimant's post-surgical right leg." Claimant contended that resolution of the claim must be based on competing ratings of 37% and 50%.

- 3 -

A deputy commissioner awarded claimant permanent partial disability benefits based on Dr. Malek's 7% impairment rating. The full Commission affirmed, with one commissioner dissenting. The majority determined that the deputy commissioner correctly based the award on Dr. Malek's apportionment of claimant's functional loss of use between pre-existing arthritis and the work injury. It noted that Dr. Malek specifically attributed 30% of claimant's disability to her pre-existing arthritis and that the record reflected multiple prior knee surgeries. In contrast, Dr. Bruno "did not reference [claimant's] pre-existing history," and therefore claimant "did not meet her burden of proving all of her permanent impairment to her right leg was the result of the March 2, 2009 compensable injury by accident."

Claimant appeals the Commission's decision limiting her permanent partial disability to 7% impairment of her right leg.

ANALYSIS

"On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." Anderson v. Anderson, 65 Va. App. 354, 361 (2015) (quoting Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83 (2005) (*en banc*)). The Court is "bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." Artis, 45 Va. App. at 83-84 (quoting Westmoreland Coal Co. v. Campbell, 7 Va. App. 217, 222 (1988)). See also Code § 65.2-706(A).

The Court "defer[s] to the Commission in its role as fact finder." Paramont Coal Co. Va., LLC v. McCoy, 69 Va. App. 343, 350 (2018) (quoting Tomes v. James City Fire, 39 Va. App. 424, 429 (2002)). "In that role, 'the [C]ommission resolves all conflicts in the evidence and determines the weight to be accorded the various evidentiary submissions.'" Id. (quoting Montalbano v.

- 4 -

Richmond Ford, LLC, 57 Va. App. 235, 252 (2010)). "It is well established that this Court 'does not retry the facts, reweigh [] the evidence, or make its own determination of the credibility of the witnesses.'" Id. (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894 (1991)).

The Workers' Compensation Act provides compensation for permanent partial loss of use of certain body parts, including loss of leg. See Code § 65.2-503(B)(13). "[F]or the permanent partial loss or loss of use of a member, compensation may be proportionately awarded." Code § 65.2-503(D). "[A] numerical rating [of the permanent partial loss of use of the injured body part] is required so that benefits may be proportionally awarded according to the percentage loss and determined by the schedule in Code § 65.2-503(B)." Va. Nat. Gas, Inc. v. Tennessee, 50 Va. App. 270, 279 (2007) (quoting Hill v. Woodford B. Davis Gen. Contractor, 18 Va. App. 652, 654 (1994)).

A claimant bears the burden of proving the level of impairment from a work-related injury. Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677-78 (1991). "Where the issue concerns a permanent partial loss of use, the [C]ommission must rate 'the percentage of incapacity suffered by the employee' based on the evidence presented." Id. at 677 (quoting County of Spotsylvania v. Hart, 218 Va. 565, 568 (1977)). "Medical evidence is not necessarily conclusive, but is subject to the [C]ommission's consideration and weighing." Id. "Thus, a medical rating of the employee's disability is evidence which an employee offers in order to meet the burden of proof." Id. at 677-78.

The Commission's decisions regarding functional impairment are findings of fact. Montalbano, 57 Va. App. at 250. "Pursuant to statute, the [C]ommission's factual findings are conclusive and binding on this Court when those findings are based on credible evidence." Id. (citing Code § 65.2-706).

Claimant asserts the Commission erred by only finding a 7% impairment of her lower right extremity. She contends that because a deputy commissioner previously determined that her work

injury to the left knee caused the permanent disability to her right knee, "[a]ny pre-accident arthritis in the knee became irrelevant once [the original joint] was removed and replaced with an artificial joint." We disagree.

Despite a deputy commissioner's May 2012 finding that the 2009 compensable work injury to the left knee exacerbated the right knee problems, this determination did not foreclose the Commission from considering the pre-existing condition in evaluating the degree of her impairment. The May 2012 determination concluded that claimant's "right knee condition is, at least in part, attributable to the compensable injury," but claimant still had the burden to prove the level of impairment from her work-related injury. See Hobson, 11 Va. App. at 677-78. Any other conclusion would render employer liable for a pre-existing impairment that arose "in some other employment or in a non-occupational accident." Noblin v. Randolph Corp., 180 Va. 345, 362 (1942). "The General Assembly 'intended to hold the employer liable only for the amount of injury sustained by the employee in the conduct of his particular business.'" Fairfax Cty. Sch. Bd. v. Martin-Elberhi, 55 Va. App. 543, 546 (2010) (quoting Noblin, 180 Va. at 362).

"When a work-related accident aggravates a pre[-]existing condition, an employee can recover for the degree of impairment caused by the aggravation but not for any pre[-]existing impairment unrelated to the work-related accident." Id. at 545-46. In Martin-Elberhi, an employee underwent a knee replacement, unrelated to her employment. Id. at 545. A year later, she fell at work and injured her reconstructed knee. Id. at 544, 545. A doctor who surgically repaired the damage caused by the fall assessed a 37% impairment rating to her knee without addressing her prior non-work-related surgery. Id. at 544. This Court reversed the Commission's award of permanent partial disability benefits based on that rating. Id. at 547. We held that the Commission erroneously based its award on an impairment rating that did not consider the impact of the employee's previous unrelated knee replacement. Id. Under Martin-Elberhi, therefore, a disability

rating must distinguish between a pre-existing condition and a work-related aggravation of this pre-existing condition.

The Commission found that claimant failed to establish that her right leg impairment was entirely a result of her work accident. The record supports this determination. She had a history of right knee problems before the 2009 work injury, including a torn ACL, multiple surgeries, and degenerative arthritis. Dr. Malek considered claimant's prior medical history as well as his examination of her when he rated her impairment at 37% and opined that "30% is related to her pre[-]existing osteoarthritis."

Dr. Bruno's 50% impairment rating, however, did not account for claimant's pre-existing knee condition. The Commission did not credit Dr. Bruno's opinion because it ignored relevant facts. Unlike Dr. Malek, Dr. Bruno did not mention claimant's undisputed arthritis or her previous knee surgeries. When presented with conflicting medical opinions, "the [C]ommission was free to decide which evidence was more credible and should be weighed more heavily." Thompson v. Brencho, Inc., 38 Va. App. 617, 624 (2002). The Commission accorded no weight to Dr. Bruno's opinion and accepted Dr. Malek's as more credible, and we will not disturb this determination on appeal. See Georgia-Pacific Corp. v. Robinson, 32 Va. App 1, 9 (2000) (affirming the Commission's rejection of one medical opinion in favor of another where the record contained credible evidence to support the determination).

Claimant argues that "[a]ny pre-accident arthritis in the knee became irrelevant once [the original joint] was removed and replaced with an artificial joint." However, claimant cites no authority for this proposition and, failing to do so, she has not complied with the provisions of Rule 5A:20(e). Accordingly, we will not consider this argument on appeal. See Jay v. Commonwealth, 275 Va. 510, 520 (2008).

Although claimant contends that the Commission should have accepted Dr. Bruno's impairment rating of 50%, the Commission did not find that opinion persuasive due to his failure to comment on claimant's pre-existing condition, and we afford great deference to that finding of fact. See Montalbano, 57 Va. App. at 250. The remaining evidence before the Commission consisted of Dr. Malek's report and rating of 7% loss of use. The Commission "must rate 'the percentage of incapacity suffered by the employee' based on the evidence presented." Hobson, 11 Va. App. at 677. Accordingly, we find that the Commission did not err in basing its award on the evidence that remained before it.

CONCLUSION

The Commission's factual findings are supported by credible evidence. Accordingly, we affirm the Commission's award of permanent partial disability benefits to claimant based on a 7% impairment rating to her right lower extremity.

Affirmed.