COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Malveaux and Athey
Argued by videoconference


VIRGINIA HAND CENTER

                                      MEMORANDUM OPINION[*] BY
v.       Record No. 0463-20-2       CHIEF JUDGE MARLA GRAFF DECKER
                                         NOVEMBER 4, 2020

ADAMS LUMBER CO., INC. AND
 BITCO NATIONAL INSURANCE COMPANY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Brian D. Bertonneau (Richmond Law, PLC, on brief), for appellant.

        Megan Kerwin Clark (Michael P. Del Bueno; A. Jacob Perkinson;
        Whitt & Del Bueno, PC, on brief), for appellees.


        Virginia Hand Center, a medical provider, appeals the Workers' Compensation

Commission's decision applying a 50% reduction to billed charges for certain surgical

procedures. Virginia Hand Center argues that in this case the Commission erred by concluding

that Code § 65.2-605 subjects multiple procedures to a 50% payment reduction. For the reasons

that follow, we conclude that the Commission exceeded the scope of its statutory authority.

Consequently, we reverse the Commission's decision and remand the case for further

proceedings consistent with this opinion.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I.  BACKGROUND[1]

On April 12, 2016, Clarence Adams suffered a hand injury while working at Adams Lumber Company.  He received an award of lifetime medical benefits for the injury.

Dr. Stephen Leibovic, an employee of Virginia Hand Center, performed surgery on the injured hand the day after the work accident.  The surgery involved multiple repairs to fractured bones, nerves, and tendons in the hand.

Virginia Hand Center submitted invoices for the surgery to Adams Lumber Company and its insurer, Bitco National Insurance Company (collectively the employer).  The employer paid some but not all of the charges.

The medical provider then filed a claim with the Commission for the unpaid medical fees.  In pertinent part, the employer defended on the ground that Code § 65.2-605 required payment of only a reduced rate for the multiple procedures performed during the hand surgery.

Following a hearing, a deputy commissioner decided that "secondary/subsequent" procedures should not be paid in full.[2]  The deputy commissioner concluded that, under existing law, one of the tendon repairs should have been paid in full as a primary procedure but the other procedures at issue were subject to a 50% reduction.

Virginia Hand Center requested review by the Commission, which unanimously affirmed the decision of the deputy commissioner.  In doing so, the Commission cited the language of the relevant statute and its previous decision in John-Jules v. Arlington County Schools, JCN VA00001027148 (Va. Workers' Comp. Comm'n Mar. 23, 2017).

---

[1] On appeal, we view the evidence in the light most favorable to the prevailing party before the Commission, in this case, the employer.  See Paramont Coal Co. Va., LLC v. McCoy, 69 Va. App. 343, 349 (2018).

[2] We note that the deputy commissioner found that the employer failed to prove that Leibovic's charges exceeded the prevailing community rate.

## II. ANALYSIS

The medical provider argues that the Commission erred by ruling that in this specific case multiple procedures are subject to a 50% payment reduction under Code § 65.2-605.

Resolution of this issue requires statutory construction consistent with well-established legal principles. Interpreting a statute and applying the plain meaning of statutory language is a question of law subject to *de novo* review. See Paramont Coal Co. Va., LLC v. McCoy, 69 Va. App. 343, 352 (2018) (citing RGR, LLC v. Settle, 288 Va. 260, 294 (2014)). Appellate courts "assume that the General Assembly chose, with care, the words it used in enacting the statute" at issue. See City of Richmond v. Va. Elec. & Power Co., 292 Va. 70, 75 (2016) (quoting Kiser v. A.W. Chesterton Co., 285 Va. 12, 19 n.2 (2013)). For this reason, courts are bound by the plain meaning of a statute unless applying this principle "would lead to an absurd result." Jones v. Commonwealth ex rel. Von Moll, 295 Va. 497, 502 (2018) (quoting Commonwealth v. Barker, 275 Va. 529, 536 (2008)). Consistent with this standard, "[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." Ford Motor Co. v. Gordon, 281 Va. 543, 549 (2011) (quoting Meeks v. Commonwealth, 274 Va. 798, 802 (2007)). Further, a "court may not 'add to the words' of a statute." Berglund Chevrolet, Inc. v. Va. Dep't of Motor Vehicles, 71 Va. App. 747, 753 (2020) (quoting Baker v. Commonwealth, 278 Va. 656, 660 (2009)).

Turning to the instant case, Code § 65.2-605 governs an employer's obligation for payment of medical services. At the time of the disputed services, the parties could contract for the fee amount or follow the prevailing community rate. Code § 65.2-605(B)(1) (2012 & Supp.

2016); 2016 Va. Acts. chs. 279, 290 (providing in section 5 that due to an emergency, the amendments took effect immediately upon passage).[3]

Also at that time, Code § 65.2-605 provided as follows:

> Multiple procedures completed on a single surgical site associated with a medical service . . . shall be coded and billed with appropriate [Current Procedural Terminology (CPT)] codes and modifiers and paid according to the National Correct Coding Initiative rules and the CPT codes as in effect at the time the health care was provided to the claimant. . . . The CPT code and National Correct Coding Initiative rules, as in effect at the time a medical service was provided to the claimant, shall serve as the basis for processing a health care provider's billing form or itemization for such items as global and comprehensive billing and the unbundling of medical services.

Code § 65.2-605(M)-(N).

Current Procedural Terminology, or CPT, developed by the American Medical Association, contains a list of codes for medical procedures and services. Am. Med. Ass'n, Current Procedural Terminology v (Jay T. Ahlman et al. eds., 2016 pro. ed. 2015) [hereinafter CPT]. Its purpose "is to provide a uniform language that will accurately describe medical, surgical, and diagnostic services." Id. The goal is for the uniform language to enable effective communication among "physicians, patients, and third parties." Id.

An additional publication, the National Correct Coding Initiative Policy Manual for Medicare Services, or the NCCI, was developed by the Center for Medicare and Medicaid Services to promote correct medical coding. Ctrs. for Medicare & Medicaid Servs., Dep't of Health & Hum. Servs., National Correct Coding Initiative Policy Manual for Medicare Services intro., at 2 (rev. ed. 2016), https://www.cms.gov/Medicare/Coding/NationalCorrectCodInitEd/ NCCI-Manual-Archive [hereinafter NCCI]. The NCCI was established in part to complement

---

[3] Unless otherwise noted, references in this memorandum opinion to Code § 65.2-605 are to the 2016 version.

the implementation of the Medicare Physician Fee Schedule to "assure that uniform payment policies and procedures were followed by all carriers." Id. "[I]nitially . . . for use by Medicare carriers," the NCCI was developed "for application to Medicare services billed by a single provider for a single patient on the same date of service." Id. intro., at 3, 5. The goals are "encouraging consistent and correct coding and reducing inappropriate payment." Id. intro., at 5-6. The NCCI focuses on when multiple services should or should not be reported separately. Id. intro., at 2-3.

Relevant here, CPT and the NCCI, both specifically referenced in Code § 65.2-605, recommend applying a different payment methodology for a procedure performed jointly with another than for a procedure performed alone. This disparate treatment is justified because "[w]hen multiple procedures are performed at the same patient encounter, there is often overlap of the pre-procedure and post-procedure work." NCCI ch. I, at 12. One goal of the NCCI guidelines is "to prevent payment for codes that report overlapping services except in those instances where the services are 'separate and distinct.'" Id. ch. I, at 22.

The guidelines further state that a provider performing additional procedures at the same anatomic site during a single patient encounter should assign a special modifier to the CPT code. CPT 709; NCCI ch. I, at 22, 25 (noting that the term "different anatomic sites" includes different organs, anatomic regions, or lesions in the same organ, but not "treatment of contiguous structures of the same organ"). A modifier is another number attached to a CPT code that gives additional information about the procedure provided. CPT 709. Modifier 51 is appropriate when multiple procedures are performed during the same session and by the same provider. Id. CPT provides guidelines for coding for multiple procedures, but it does not give any guidance on how to bill for such procedures. See id. In contrast, the NCCI does contain some payment provisions for multiple procedures performed at a single surgical site. For example, the NCCI provides a

list of pairs of CPT codes for which, if reported together, only one "is eligible for payment." NCCI ch. I, at 6.

In the instant case, Virginia Hand Center does not contest the Commission's conclusion that modifier 51 applies but argues that neither CPT nor the NCCI provides for a 50% reduction for the additional procedures. The parties agree that the 50% reduction is not in CPT or the NCCI but, instead, is a standard taken from the Medicare Claims Processing Manual. See Ctrs. for Medicare & Medicaid Servs., Dep't of Health & Hum. Servs., Pub. No. 100-04, Medicare Claims Processing Manual ch. 23 add., at 9-10 (transmittal 3144 Dec. 5, 2014), https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/Downloads/ R3144CP.pdf [hereinafter the Medicare Claims Manual].

Virginia Hand Center argues that because the Medicare Claims Manual is not specifically incorporated into CPT or the NCCI, it is likewise not incorporated into the statute. The employer responds that neither set of guidelines provides a particular payment structure and suggests that the Commission correctly concluded that the Medicare Claims Manual is the appropriate vehicle through which to determine the correct payment methodology.

At the time of the appellant's surgery, the language of the applicable statute provided that charges for medical services generally could not exceed the prevailing community rate. Code § 65.2-605(B). The statute further provided, in pertinent part, that multiple surgical procedures should "be coded and billed with appropriate CPT codes and modifiers and paid according to the [NCCI] rules and the CPT codes as in effect at the time the health care was provided to the claimant." Code § 65.2-605(M) (emphasis added). The statute, CPT, and the NCCI do not specify how to bill multiple medical procedures. Clearly, CPT and the NCCI assign such medical procedures a certain modifier and suggest that they generally should be paid at a reduced rate due to the overlap of pre- and post-operative procedures, but they do not provide a reduction

- 6 -

methodology to be applied universally.  Nor do they reference the Medicare Claims Manual, which does provide for a 50% reduction for all but the primary procedure.

Consistent with well-established legal principles, this Court will not add words to the statute.  See Berglund Chevrolet, 71 Va. App. at 753.  The Commission's application of the multiple procedures payment methodology provided in the Medicare Claims Manual exceeded the bounds of the statutory language.  The legislature would have included language incorporating the Medicare Claims Manual had it intended to do so.[4]  As the statute was written at the time of the surgery, the charges for the multiple procedures should have been limited to any relevant payment provisions in the NCCI and, absent that, to the prevailing community rate.[5]

In sum, the Commission correctly determined that the multiple procedures should have been assigned modifier 51 in accordance with CPT and the NCCI.  However, the Commission erred in applying the multiple procedures payment methodology provided in the Medicare Claims Manual.  The assignment of modifier 51 should have aided the Commission in determining the prevailing community rate by notifying it of the need to compare the charges to the standard charges in the community for the same procedures utilizing the same modifier.  See generally Griffin v. Suffolk City Pub. Schs., 71 O.W.C. 217, 219 (1992) (concluding that the

---

[4] For example, Code § 32.1-276.5(C) provides that the value of medical care given as charity "shall be based on the medical care facility's submission of applicable Diagnosis Related Group codes and [CPT] codes *aligned with methodology utilized by the Centers for Medicare and Medicaid Services for reimbursement* under Title XVIII of the Social Security Act." (Emphasis added).  "When a statute contains a given provision with reference to one subject, the omission of such provision from a similar statute dealing with a related subject is significant to show the existence of a different legislative intent."  Williams v. Matthews, 248 Va. 277, 284 (1994).  This comparison between statutes demonstrates "that the General Assembly clearly knew how to" incorporate methodology used for Medicare claims "when it so desired."  Layne v. Crist Elec. Contr., Inc., 62 Va. App. 632, 642 (2013) (quoting Hitt Constr. v. Pratt, 53 Va. App. 422, 430 (2009)).

[5] We recognize the difficulty that the statutory language applicable in this case presented to the Commission.  Nonetheless, the Commission erred in its interpretation of the statute.

Commission could reasonably determine "the usual and customary charges for the services rendered" by "assigning codes for the services" for comparison to "fees in the geographic area"). Consequently, we reverse and remand this case for the Commission to reconsider the appropriate charges for the multiple procedures in a manner consistent with this opinion based on the law applicable at the time of the surgery.

The Commission ostensibly based its decision on the legislative history of Code § 65.2-605 and the Commission's historical treatment of the issue. See John-Jules v. Arlington Cnty. Schs., JCN VA00001027148 (Va. Workers' Comp. Comm'n Mar. 23, 2017).[6] To explore the context in which the Commission operated, we consider the history of Code § 65.2-605.

Originally, the statute did not make any special provisions whatsoever for multiple procedures performed in one surgical encounter. Medical procedures were simply to be paid in accordance with prevailing community rates. See Code § 65.2-605 (1991); 1991 Va. Acts ch. 355. Under this version of the statute, the Commission considered payment for multiple procedures and held that it was unclear why the doctor "would earn $400 for the first procedure and less for the others, simply because they were performed in conjunction with others, instead of on separate dates." Hargrave v. Williamsburg/James City Cnty. Sch. Bd., VWC No. 195-12-95, slip op. at 7 (Va. Workers' Comp. Comm'n Mar. 20, 2002).

In 2014, the General Assembly added the provision to Code § 65.2-605 that is at issue in this case: "Multiple procedures completed on a single surgical site . . . shall be coded and billed with appropriate [CPT] modifiers and paid according to the [NCCI] rules and the CPT . . . ." Code § 65.2-605(C) (2012 & Supp. 2014); 2014 Va. Acts ch. 670.

---

[6] We examine the pertinent Commission opinions because they are relevant to understanding the backdrop against which the Commission decided this case. See generally United Parcel Serv., Inc. v. Prince, 63 Va. App. 702, 708 n.2 (2014) (noting that Commission decisions are not binding on this Court).

- 8 -

The Commission interpreted the application of that provision in John-Jules v. Arlington County Schools, JCN VA00001027148 (Va. Workers' Comp. Comm'n Mar. 23, 2017). In that case, the employer appealed an award to the medical provider for a 2015 surgery that consisted of multiple procedures. Id., slip op. at 1-2. At issue was whether the NCCI rules required a 50% reduction for charges for multiple procedures assigned modifier 51. Id., slip op. at 2. The Commission held that the subsequent procedures at issue were "subject to a 50% reduction." Id., slip op. at 5. It based this holding on the conclusion that the legislature amended Code § 65.2-605 in 2014 because the Commission had previously "declined to apply multiple procedure discounts." Id.

The General Assembly amended the statute again in 2016. This amended version directed the Commission to adopt medical fee schedules to be used to determine the amounts for reimbursements for medical services.[7] See Code § 65.2-605(B)(2), (C); 2016 Va. Acts chs. 279, 290. The Virginia Medical Fee Schedules, however, apply to medical services provided on or after January 1, 2018. Code § 65.2-605(C)(1).

---

[7] This amendment became effective following the injury and treatment at issue in John-Jules, so it did not apply to that decision. See Pennington v. Superior Iron Works, 30 Va. App. 454, 458 (1999) (noting that generally the statute in effect at the time of the injury governs workers' compensation claims); see also Wardell Orthopaedics, P.C. v. Colonna's Shipyard, Inc., 72 Va. App. 296, 304-06 (2020) (explaining that a statute may apply retroactively if it expresses legislative intent to do so and it is not substantive).

At the time of the procedures at issue in this case, Code § 65.2-605 continued to require that "[m]ultiple procedures completed on a single surgical site . . . be coded and billed with appropriate CPT codes and modifiers and paid according to the [NCCI] rules and the CPT codes as in effect at the time the health care was provided to the claimant." Code § 65.2-605(M). Adopted later, the Virginia Medical Fee Schedules now apply "multiple procedure reduction rules" to "[s]econdary and subsequent procedures." Va. Workers' Comp. Comm'n, Medical Fee Schedules Ground Rules 14-15 (Nov. 14, 2017 rev.); see Va. Workers' Comp. Comm'n, Medical Fee Schedules 544, 574-75, 668 (Nov. 14, 2017 rev.). The Medical Fee Schedules do not apply to the services at issue in this case because they had not yet gone into effect at the time the instant medical services were provided. Medical Fee Schedules, supra, at 1.

Based on the addition of language that "[m]ultiple procedures completed on a single surgical site" should be coded and billed in conjunction with <u>CPT</u> and the <u>NCCI</u>, the Commission concluded that under the applicable version of the statute the legislature intended either for (a) all subsequent procedures to be paid at 50% or (b) multiple procedures to be paid in accordance with the <u>Medicare Claims Manual</u>. <u>See</u> Code § 65.2-605(M-N). While we understand the Commission's position, we disagree with that interpretation. We conclude that instead the legislature intended the medical codes and modifiers to help the Commission determine the prevailing community rate. In addition, the statute applies the specific payment provisions that *are* within the <u>NCCI</u>. Further, <u>CPT</u> and the <u>NCCI</u> were intended to be used in conjunction with the Virginia Medical Fee Schedules *once they took effect*. <u>See, e.g.</u>, Va. Workers' Comp. Comm'n, <u>Medical Fee Schedules Ground Rules</u> 7-9 (Nov. 14. 2017 rev.) (implicitly incorporating <u>CPT</u> and the <u>NCCI</u> by reference).

The employer attempts to highlight a discrepancy in the statutory language providing that multiple surgical procedures should be "paid according to the National Correct Coding Initiative rules and the CPT codes." <u>See</u> Code § 65.2-605(M). It argues that neither the <u>NCCI</u> nor <u>CPT</u> includes payment guidance and, instead, focuses on providing code and modifier numbers for different procedures. The employer suggests that it is therefore impossible to *pay* for medical services in accordance with the <u>NCCI</u> or <u>CPT</u>. It concludes that consequently the only way to make this statutory language meaningful is to interpret it as incorporating the <u>Medicare Claims Manual</u>, which does include some payment provisions. However, this argument overlooks that the <u>NCCI</u> does include some specific payment provisions. <u>See</u> <u>NCCI</u> ch. I, at 6. In a case in which those payment provisions are not applicable, the codes and modifiers can be used to determine the prevailing community rate.

The plain language of Code § 65.2-605 simply does not apply an automatic 50%

reduction for multiple procedures at a surgical site, nor does it incorporate the Medicare Claims

Manual. Therefore, the Commission applied an incorrect payment methodology when it reduced

the charges for the subsequent procedures by 50% without considering the prevailing community

rate.[8]

## III. CONCLUSION

The plain language of the version of Code § 65.2-605 applicable in this case does not

provide for application of the Medicare Claims Manual or an automatic 50% payment reduction

for multiple procedures. As a result, the Commission erred by determining the allowable charges

for multiple procedures based on the methodology contained in the Medicare Claims Manual.

Consequently, we reverse and remand the Commission's decision.

Reversed and remanded.

---

[8] This is not to say that the 50% reduction is not appropriate. On remand, the Commission will have to determine, based on the evidence in the record, the prevailing rate in the community and whether it provides for a 50% reduction for additional procedures. See Va. Polytechnic Inst. & State Univ. v. Posada, 47 Va. App. 150, 161 (2005) (noting that as the factfinder, the Commission is charged with determining the prevailing community rate). See generally Ceres Marine Terminals v. Armstrong, 59 Va. App. 694, 703-05 (2012) (explaining that a medical bill is *prima facie* evidence that the charges comply with the Act and its standard "prevailing community rate" requirement). We hold only that the relevant statute at the time of the surgery did not incorporate the Medicare Claims Manual and therefore did not mandate a 50% reduction.